GERMAN-AMERICAN INSURANCE COMPANY OF NEW YORK v. JOHN A. BUCKSTAFF.

FILED OCTOBER 24, 1893.   No. 4146.

1. **Oral Agreements of Attorneys**: ARBITRATION: EVIDENCE: PRACTICE.   Oral agreements of attorneys, entered into out of court, to submit matters in suit to arbitration will not be enforced when objection is made thereto.   The only competent proof to establish an agreement made by an attorney in regard

to the disposition of a cause is the evidence of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court.

MAXWELL, C. J., dissenting. The policy contains a provision for the appointment of arbitrators to determine the amount of the loss. Under this provision arbitrators were appointed by each of the parties, who examined the property and made a report as to the amount of the loss. The appointment was authorized by the policy, and did not depend for its validity on the oral agreement of the attorneys. In my view, therefore, the point decided is not applicable to the facts.

2. Insurance: TRIAL: EVIDENCE OF ARBITRATION: INSTRUCTIONS. Where there is no competent evidence of an agreement of the parties to an action to submit their matters of difference to arbitrators, it is error to submit the question of an award to the jury.

3. ———: BUILDING VACANT OR UNOCCUPIED: QUESTION OF FACT: INSTRUCTIONS. Whether a building covered by a policy of insurance is, or is not, vacant and unoccupied is a question of fact to be determined by the jury under proper instructions of the court.

ERROR from the district court of Lancaster county. Tried below before CHAPMAN, J.

The opinion contains a statement of facts.

*Harwood, Ames & Kelly*, for plaintiff in error:

There was no competent proof of submission to arbitrators. Evidence of the oral agreement entered into by counsel was incompetent. (Sec. 7, ch. 7, Comp. Stats., 1889.)

*Chas. O. Whedon, contra*, to sustain the proposition that the oral stipulation of the attorneys is binding, cited *Burnham v. Smith*, 11 Wis., 270.

Where parties have submitted matters of difference to arbitrators of their own selection, and an award has been made in pursuance of such submission, the award will be deemed binding until set aside. (*Tynan v. Tate*, 3 Neb., 388.)

NORVAL, J.

The defendant in error on and prior to the 21st day of October, 1887, was the owner of the Metropolitan Hotel building, situated on lots 16, 17, and 18, in block 45, in the city of Lincoln, upon which there were in force policies of insurance against loss by fire in the following named companies and amounts: The German-American Insurance Company, $1,500; The Liverpool & London & Globe Insurance Company, $3,000, and the Fireman's Fund Insurance Company, $1,500.   On the night of October 21st a fire occurred, and the building covered by the policies was partially destroyed.   Proofs of loss were duly made by the insured, and the damages not being paid, the defendant in error brought suit against each of the companies.   The policy in suit contained the following stipulations:

"1. No liability shall exist under this policy for loss or damage in or on any vacant or unoccupied building, unless consent for such vacancy or non-occupancy be indorsed hereon.

"2. If the risk be increased by any means without the consent of this company written hereon, this policy shall be void.

"3. In no case shall the claim be for a greater sum than the actual damage to, or cash value of, the property at the time of the fire, nor shall the assured be entitled to recover of this company any greater proportion of the loss or damage than the amount hereby insured bears to the whole sum insured on said property, whether such other insurance be by specific or by general or floating policies, and without reference to the solvency or liability of other insurers."

The defendant answered, setting up the above conditions of the policy, and alleged, in substance, that at and prior to the time of the fire the building was vacant and unoccupied without the knowledge and consent of the defendant;

that when the policy was issued the building was used as a hotel, and that shortly before the loss it ceased to be used for that purpose, and without the knowledge or consent of the company was used for the purpose of storing furniture and articles of personal property, including bedticks containing straw, hay, and other combustible materials, thereby increasing the risk. The answer further avers that the total damage to the building by reason of the fire did not exceed $1,500, and sets up the existence, at the time of the fire, of a policy on this building for $1,500 issued by the Fireman's Fund Insurance Company, and also a policy for $3,000 issued by the Liverpool & London & Globe Insurance Company.

The plaintiff for reply admits the existence of the two policies mentioned in the answer, and denies all other allegations contained in the answer.

Subsequently the plaintiff filed a supplemental petition alleging, in effect, that since the commencement of the action the matters in controversy had been, by agreement of parties, submitted to John Fraas and James Tyler, as arbitrators, to ascertain and adjust the loss, who thereupon adjusted the damages and made their report in writing, a copy of which is set out in the answer as follows:

"Lincoln, Neb., March 7, 1889.

"The undersigned, being appointed arbitrators to adjust the loss caused by fire on the veneered building on the corner of O and Eighth streets, owned by J. A. Buckstaff, find the following amount of damages: $2,981.50.

"John Fraas.

"James Tyler."

The plaintiff alleges that the defendant has not paid the amount of the award, nor any part thereof.

The defendant answered the supplemental petition by a general denial.

There was a trial to a jury, with verdict for the plaintiff in the sum of $847.41.

On the trial the plaintiff put in evidence the so-called award. The defendant objected to its being received in evidence for the reason that the same is incompetent and irrelevant, which objection was overruled, and an exception taken.

Counsel for plaintiff in error contend that there was no arbitration, and no competent evidence was introduced on the trial to establish an agreement to arbitrate. The only proof tending to show a submission to arbitration was the testimony of the plaintiff Buckstaff, and that of Mr. Whedon, one of his attorneys. The testimony of Mr. Whedon is to the effect that, during the pendency of the suit, he entered into an oral agreement with Mr. Ames, one of the attorneys for the defendant, for the submission of the matters in dispute to arbitrators, by the terms of which each party was to select an arbitrator, and the two thus chosen were to ascertain the amount of damages done to the building by the fire, and if unable to agree they were authorized to choose a third person to act with them; that pursuant to such agreement the cause was continued over a term of court; and that John Fraas and James Tyler were selected as arbitrators, who made report as above set forth.

Mr. Buckstaff's testimony touching the matter of arbitration is as follows:

Q. Now what occurred? What did you do in respect to adjusting this loss, the arbitration?

A. Mr. Ames and I had a conversation with regard to that. He said he didn't want any lawsuit.

Q. State the facts. What was done about submitting this to arbitration?

A. The case was to be tried. Mr. Ames and I had a talk over the matter, and he said he thought we could settle it without a lawsuit, and they would appoint a man and I could appoint a man, and they could go down there and see what the damage was, and he thought we could fix it up without a lawsuit; get the facts in the case, how much

the damage was.  I selected Mr. Fraas, and Mr. Ames selected Mr. Tyler, an architect here.  They went down there and figured on the loss and reported it to Mr. Whedon and Mr. Ames. .

The testimony of Mr. Whedon and the plaintiff was objected to, as incompetent, immaterial, and irrelevant, and not the best evidence, and not the method of proof prescribed by the statute.  Exception was taken by the defendant to the overruling of the objection.

It will be observed that the alleged agreement to arbitrate was not reduced to writing, nor was such an agreement entered upon the records of the court.  The question is, therefore, squarely presented, whether the oral promise of the attorney of the plaintiff in error to arbitrate the matters in litigation could be proved by the testimony of the person who heard the attorney make the agreement.

Section 7, chapter 7, Compiled Statutes, provides that "An attorney or counselor has power :  I.  To execute, in the name of his client, a bond for an appeal, certiorari, writ of error, or any other paper necessary and proper for the prosecution of a suit already commenced.  II.  To bind his client by his agreement in respect to any proceeding within the scope of his proper duties and powers; but no evidence of any such agreement is receivable, except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court," etc.  The language of this section is unambiguous, and its meaning is too plain to admit of more than one construction.  A client is only bound by the oral stipulations of his attorney made out of court, when the same are established by the testimony of the attorney making the same. The purpose and object of the legislature in adopting the above section was to relieve the courts from enforcing oral agreements of attorneys entered into out of court, in regard to a matter pending in court, in all cases except where the contract is established by the evidence of the attorney of the

client against whom it is sought to be enforced. The language used by the legislature is : " No evidence of any such agreement is receivable except the statements of the attorney himself." Without doing violence to the language employed it cannot be construed to mean that an agreement made by an attorney can be established by the testimony of others who were present and heard it. To hold that it can would be contrary to the spirit as well as the letter of the statute. This court has more than once decided that verbal agreements entered into between attorneys out of court relating to matters in litigation will not be recognized nor enforced. (*Rich v. State National Bank,* 7 Neb., 201 ; *Haylen v. Missouri P. R. Co.,* 28 Neb., 660.)

The testimony referred to was incompetent to establish an agreement to arbitrate, and the alleged award should not have been received in evidence. Its admission could not have been otherwise than prejudicial to the defendant on the question of the amount of damages that plaintiff sustained. The defendant introduced on the trial the proofs of loss, made, signed, and sworn to by the plaintiff recently after the fire, in which the total loss or damage was stated to be $2,500, and apportioned between the different companies carrying the risk as follows: Fireman's Fund, $625 ; Liverpool & London & Globe, $1,250; and German-American, $625. The defendant further put in evidence a letter written by Buckstaff to the company, transmitting the proof of loss, as well as his sworn statement furnished to an agent of the company shortly after the fire, in each of which the total loss was placed at $2,500. The plaintiff at the trial testified that the entire damage to the building was $3,500. He called other persons as witnesses who estimated the total damages at $3,000. It is doubtless true that Mr. Buckstaff was not precluded from proving that his loss was greater than he had stated it to be in his letter, proofs of loss, and sworn statement. It was the province of the jury to determine from the entire testimony before

them the amount of damages to the building. In view of the conflicting character of the evidence upon this issue, the introduction of the report of the arbitrators, in which the damages were placed. at $2,981.50, may have led the jury to adopt the amount stated by plaintiff's witnesses, rather than the sum admitted by Mr. Buckstaff to be his loss before suit was commenced.

Where parties, by agreement, submit their matters of difference to arbitrators selected by themselves, the award made within the range of their appointment is binding upon the parties. The validity of an award rests upon an agreement to arbitrate, and the selection of arbitrators in pursuance of said agreement. The validity of the alleged award introduced in evidence depends upon an alleged oral agreement entered into out of court between the attorneys of the respective parties, and such agreement, as we have already shown, at least to our own satisfaction, has no binding force.

We have not failed to observe the provisions in the policy in suit relating to arbitration. The policy stipulates, in effect, that in case the amount of loss is not agreed to, upon the written request of either party, the loss shall be appraised by disinterested and competent persons, one to be selected by the company, and the other by the assured, and in case of their failure to agree, at the request of either party, the two so chosen may select a third person to act with them, and the award of any two in writing to be conclusive as to the amount of damages, but that neither the appraisal nor agreement to arbitrate should be construed as evidence of the validity of the policy, or of the company's liability thereon. The policy contains the further clause " that no suit or action against the company for the recovery of any claim, by virtue of the policy, shall be sustained in any court of law or chancery until after an award shall have been obtained, fixing the amount of such claim in the manner above provided," etc. With no degree of success.

can it be maintained that the above terms of the policy give validity or force to the award in question. No arbitrators were chosen, nor has there ever been any submission of the question of damages to arbitration under the conditions of the policy. This is manifest from both the pleadings and evidence. The supplemental petition sets up that about the last of February, or the first of March, 1889, an agreement was entered into between the plaintiff and defendant whereby the case was continued over the February, 1889, term of court, and that each party should select one person as arbitrator, and that the person so chosen should ascertain, determine and state the amount of loss sustained by reason of the fire, and that in pursuance of said agreement the cause was continued, arbitrators were selected, and they made their award in writing. There is no allegation in the pleadings that the submission to arbitrators was by virtue of the conditions of the policy. All the evidence shows that the right to arbitrate depends solely upon the oral agreement of the attorneys heretofore mentioned.

Upon the subject of arbitration the court gave the following instruction, to which the defendant excepted at the time:

"In this case, evidence having been admitted before you touching the alleged award made by the persons selected by the plaintiff's and defendant's counsel to ascertain the extent of plaintiff's damage, you are instructed as a matter of law that an award made in pursuance of an agreement between parties touching their differences in litigation, where the parties have submitted their matters of difference to arbitrators of their own selection, and when the arbitrators act within the scope of their authority, becomes the act of the parties, and is decisive of their rights; and if you find from the evidence in this case that the defendant insurance company authorized its attorneys to select James Tyler as an arbitrator to act on behalf of defendant in appraising the damage done to the plaintiff's building, and

that said arbitrator proceeded to act in pursuance of such appointment and selection, in conjunction with the person selected by the plaintiff to perform a like service and duty, and made with such person a fair estimate of plaintiff's damage, that defendant will be estopped thereby from disputing the correctness of such award, or the authority of such arbitrators to make and return the same; and that said award, when regularly made and returned, will be binding upon the parties to this action touching all matters embraced therein."

There being no competent evidence that the defendant agreed to submit the matters in litigation to arbitration, that question should not have been submitted to the jury to pass upon. In view of the evidence before the jury, no verdict, other than the one returned, could have been found without disregarding this instruction.

Complaint is made of the giving of the third paragraph of the court's charge to the jury, which reads as follows:

"3. If you find from the evidence that plaintiff did not abandon the property covered by said policy of insurance, and that the same was not vacant at the time of said fire, your verdict will be in favor of plaintiff for such damage as you may find from the evidence he is entitled to recover."

The defendant submitted a request to charge, which embraced the converse of the proposition stated in the foregoing, which request was refused. It is contended that the third instruction is faulty, in that it omitted to define the meaning of the term "vacant and unoccupied" as used in the policy. The interpretation of the provisions of a policy of insurance, like those of other contracts, is for the court, and not for the jury. So it was a question of law for the court to determine what was meant by the above term "vacant and unoccupied" in the policy in suit; and whether or not the building was vacant and unoccupied was a question of fact for the jury to pass upon under

proper instructions of the court.   If the instruction objected to was the only one given by the court upon that subject, then its giving would be reversible error.

The fourth instruction is as follows:

" 4.  You are instructed that the policy of insurance provides that if the premises insured become unoccupied without the assent of the defendant company indorsed thereon, then the policy should become void ; and if you believe from the evidence that, at the time of the fire, the premises were wholly unoccupied without the assent of the defendant, the policy had become invalid, and you should find for the defendant.   In determining, under the evidence, whether the premises became unoccupied before the fire and were vacant at the time of the fire, you are instructed as a matter of law that, when the property insured is a hotel, the occupancy required under such a policy as this is such occupancy as ordinarily attends a hotel.   The word 'unoccupied' is to be construed in its ordinary and popular sense, and if you believe, from the evidence, that, after the making of the policy, the insured or his tenant had moved from the building in controversy, and entirely ceased to occupy the same at the time of the fire, then the policy became void.   However, if you believe from the evidence that such vacancy was temporary only, and was occasioned by the fact that plaintiff's tenant was, at the time of the fire, or a short time before, moving from said plaintiff's building, and had not removed all his goods and furniture when the fire occurred, such removal would not render the premises vacant and unoccupied within the meaning of the policy of insurance, and your verdict in such case should be in favor of the plaintiff."

We are of the opinion that the third and fourth instructions, construed together, as they should be, fairly submitted to the jury the question whether the plaintiff had violated the terms of the policy.

As there must be a new trial, it will not be necessary to discuss the evidence, or to pass upon its sufficiency to sustain the verdict. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.