## SARAH DOUD v. CITIZENS' INS. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF LACKAWANNA COUNTY.

Argued February 26, 1891—Decided March 23, 1891.
[To be reported.]

(*a*) A building, described as " occupied by tenants," was insured by a
policy containing the following stipulations: " This policy will not
cover unoccupied buildings, unless insured as such, and if the premises
insured shall be vacated without the consent of the company indorsed
hereon, . . . . . the policy shall cease and determine."

(*b*) The building was destroyed by fire after removal of the tenant there-
from. There was testimony tending to prove that the tenant did not
finish moving out until two days before the fire, and that some of her
goods remained until the fire; that the owner took possession Wednes-
day, the day before the fire, was in the house all that day, and had some
furniture then in it.

(*c*) The owner offered to prove that having learned, when she came to
the house on Wednesday, of the removal of her tenant, she returned
that evening to her home seven miles distant, and was engaged all of
Thursday in preparing to move into the house on Friday morning, but
was prevented from so moving by the fire, and that she had placed a
man in charge of the house on Wednesday, to remain until Friday:

1. The offer should have been received; upon the facts as shown and of-
fered to be shown there was no breach of the condition in the policy
prohibiting the vacation of the premises: Franklin Ins. Co. v. Kepler,
95 Pa. 492; Lebanon Ins. Co. v. Leathers, 20 W. N. 107; Ins. Co. of
N. A. v. Hannum, 1 Mona. 369. McClure v. Insurance Co., 90 Pa.
277, distinguished.

2. The unavoidable absence of the insured from the building, for a tem-
porary purpose, was not a vacation, within the meaning of the policy.
Some cessation of occupancy is necessarily incident to a change of
tenants; and a reasonable time must be allowed to make such a change,
without imposing on the assured the penalty of an intended or a per-
mitted vacation of the premises.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and
MITCHELL, JJ.

No. 251 January Term 1891, Sup. Ct.; court below, No. 819
October Term 1888, C. P.

On September 22, 1888, Sarah Doud brought assumpsit up-

on a policy of insurance, against the Citizens Insurance Company of Pittsburgh. The defendant pleaded non-assumpsit.

At the trial on November 26, 1890, the following facts were shown:

On June 29, 1887, the defendant company issued to the plaintiff a policy insuring against fire, for two years from date, a dwelling-house in the village of Drinker, owned by the plaintiff and described in the policy as follows: "One thousand dollars on her two-story frame shingle-roof building, including additions, porches and projections, situated on a farm in Drinker township, on line of Pennsylvania Coal Co. railroad, at No. 21; occupied by tenants." One of the conditions of the policy provided:

"6. This policy will not cover unoccupied buildings, unless insured as such, and if the premises insured shall be vacated without the consent of the company indorsed hereon, . . . . . the policy shall cease and determine."

The building insured was destroyed by fire on Thursday, June 7, 1888. Proofs of loss, sworn to by the plaintiff, were furnished to the defendant in due time, the part relating to the manner in which the building was occupied being as follows: "The building insured, or containing the property destroyed or damaged, was occupied in its several parts by the parties hereinafter named, and for the following purposes, to wit: Mrs. J. Berheight, as a dwelling- and boarding-house.

Mrs. Berheight was occupying the house as a tenant at the time the policy was issued. Before the fire occurred, she removed her residence to another house, a short distance away. She testified as a witness for the defendant as follows:

"Q. How long before the fire, did you move away from the premises? A. Well, it was about a week, somewheres near that. Q. Did you move all your things away from the house? A. Yes, sir; I moved away all my things. [Objected to.] Q. When did you see Mrs. Doud last before the fire? A. Well, I didn't see her until the day the house was burned; she came over that day. . . . ."

Mr. Smith: "Q. You say you don't know just how many days before? A. Well, it was about a week, as near as I can tell. Q. Can you say it was exactly a week, or more, or less? A. No, I cannot. Q. You wouldn't be precise as to a day or

Statement of Facts.

two?　A. No.　Q. Do you remember what day of the week it was that you saw Mrs. Doud over there?　A. Well, I don't remember exactly whether it was Friday, or what day it was; I can't tell; but it was a week after I moved out, I know that. Q. You think it was on a Friday that she was over there? A. I think so.　I am not sure.　Q. Did you have any conversation with her on that day?　A. No, sir; none at all.　Q. You had the key of the house when she called there?　A. Yes, sir; I had the key of the house; she sent for the key that day. . . . . Q. Don't you know you took some of your things out on the Tuesday before that Friday that you speak of?　A. No, I didn't take anything out on Tuesday.　Q. What day of the week did you move?　A. The first of the week; I don't know exactly what day it was; it was Monday or Tuesday.　Q. How many days did it take you to get all your things out?　A. I don't know; it took me one or two days.　Q. Wasn't there some of your things left in the house?　A. No, sir; there wasn't anything left in the house. . . . ."

Susan Shirer testified for the defendant that, after an absence, the witness returned to her home in Drinker on the Monday preceding the fire; that at that time Mrs. Berheight was not living in the plaintiff's house, but in another one, and the witness was informed, upon arriving at home, that she had vacated the plaintiff's house on Tuesday: "Q. What about the house and Mrs. Berheight; did you pay particular attention to her movements?　A. No, sir; I wasn't home.　Q. She may have moved out the next day after you got home, might she not?　A. I didn't see her. . . . .　Q. As a matter of fact, Mrs. Berheight may have been moving a few of the things up to the day of the fire, and you wouldn't know it?　A. She might; I don't know anything about it."　Sarah Brown testified that Mrs. Berheight had just moved out at the time of the fire; that, if the witness remembered right, she carried the last of her things out two days before the fire; that on the day before the fire the witness went to the house with the plaintiff, who remained there all day or until 6 o'clock P. M.; and that at that time there were three or four articles of furniture belonging to the plaintiff in the house.

In rebuttal, the plaintiff testified that she had rented her house to Mrs. Berheight until such time as the witness would

Statement of Facts.

want to use it, three weeks' notice to be given by either party of an intention to terminate the tenancy; that Mrs. Berheight gave no notice of her intention to leave the premises, and the witness did not know that she had left until Wednesday, June 6th, when the witness came to Drinker from her home at Dunmore and went to the house, and on that occasion the witness found in the house several articles that did not belong to her. The plaintiff then made the following offers:

Counsel for plaintiff proposes to prove by the witness on the stand that she came to Drinker desiring to get possession of part of the building, to be occupied by herself and her invalid son; that, upon learning Mrs. Berheight was moving out, she came to her home in Dunmore, and immediately packed such household and personal articles as she needed, with the intention of moving into the house that was destroyed by fire on Friday morning, the day after the fire; that she had her things packed on Thursday and ready to move on Friday, and Thursday evening she learned of the destruction of the house by fire, and therefore did not go to it.

Counsel for defendant object to this. The evidence is immaterial, irrelevant and incompetent, the witness having sworn in the proofs of loss that the house was occupied by Mrs. Berheight at the time of the fire.

By the court: I will sustain the objection, not because of anything contained in the proofs of loss, but because the evidence offered it does not seem to me is relevant under the terms and conditions of the policy, or would tend to procure an avoidance of the policy according to the sixth clause of it; exception.[1]

Counsel for plaintiff repeat the offer above made; to be followed by proof that the child of the plaintiff was ill, and the plaintiff was directed by the family physician to take the child from where she was living at Dunmore, to Drinker, it being a more healthy and desirable place for the child, and for this reason the plaintiff was hastening her removal into the house as fast as possible; and also that the house was placed in charge of a man from Wednesday the 6th, until the plaintiff could get there on Friday morning.

Counsel for defendant object to the offer as immaterial and irrelevant.

By the court: I will sustain the objection ; exception.[2]

Counsel for plaintiff propose to prove by the witness that a Mr. Goodchild was general agent and adjuster for the defendant company ; that about June 14th, after he had visited the premises and become informed of the facts, he directed the plaintiff to agree to an adjustment or appraisement of the loss, he to pay one half the expense of doing so, and she the other half, to which she agreed; that in pursuance of that request Mr. Woolsey was employed by them jointly, and an appraisement was made ; that afterwards, at the adjuster's direction, formal proofs of loss were prepared at an expense to the plaintiff of fifteen dollars, and forwarded to the company ; this to show an estoppel or waiver.

Counsel for defendant object to the offer as immaterial and irrelevant, and as not rebuttal, and that the proof does not conform to the allegations of the declaration.

By the court: Having regard to the twenty-third condition of the policy, I do not see how this could amount to a waiver. Being offered for that purpose, I will sustain the objection made, and exclude it; exception.[3]

I do not decide whether under any other circumstances it might amount to a waiver or not; I doubt whether it would.

Counsel for plaintiff make the same offer generally.

By the court: I do not understand what that is.

Counsel for plaintiff offer to prove those facts in that offer.

Counsel for defendant make the same objection as before, and that a general offer not including a specific fact is not admissible.   The purpose of an offer is to give specific facts proposed to be proved.

By the court: I will sustain the objection ; exception.[4]

Mary Doud, a daughter of the plaintiff, being called, plaintiff's counsel proposed to show by the witness that she was engaged all day Thursday, the day of the fire, picking up and packing household articles preparatory to her mother's removal on Friday morning to the house at Drinker which was destroyed by fire ; and that both she and her mother learned of the destruction of the house by fire on Thursday evening, after this work was done and they were ready to depart for Drinker the following morning.

Objected to as immaterial and irrelevant.

Charge of Court below.

By the court: Objection sustained; exception.[5]

The testimony being closed, the court, ARCHBALD, P. J., charged the jury as follows:

By one clause of the policy, under which the property destroyed was insured, the policy is stated not to extend to unoccupied buildings, and there is a further stipulation that if the property be vacated, without the consent of the company, then the policy shall be avoided. The undisputed evidence in this case, is that when the fire occurred these premises were not occupied. They had been occupied by Mrs. Berheight, but according to her evidence, she moved out at least a week before the fire occurred. According to the testimony of some of the other witnesses, she was moving her property from the premises down to within two days of the fire. But the undisputed evidence of the plaintiff herself, and of all these other witnesses who testified upon it, is that the premises were vacant, and had been vacated previous to the fire. It is immaterial whether the plaintiff knew it or not; if her tenant had vacated without her knowledge, and the property was destroyed while the premises were so unoccupied, there could have been no recovery; but the evidence is that the plaintiff knew, the day before the night of the fire, that there was nobody occupying the premises. It was her duty then either to see that the premises were occupied and no longer left vacant, or to obtain the consent of the company that they should remain vacant until they could be properly occupied.

The policy of insurance is the law between these two parties. The company agrees to indemnify only against loss happening by fire, upon the terms and conditions mentioned in the policy; and they expressly stipulate against liability where the loss occurs when the property insured is vacated. Under the decisions of our Supreme Court, I feel compelled to direct a verdict for the defendant. That verdict will now be entered; exception.[6]

—The jury returned a verdict for the defendant as directed. Judgment having been entered, the plaintiff took this appeal, specifying that the court erred:

1-5. In refusing the plaintiff's offers.[1 to 5]

6. " In directing a verdict for defendant." [6]

Arguments.

*Mr. P. P. Smith* (with him *Mr. Connolly* and *Mr. Davis*), for the appellant:

1. The insured building was not vacant or unoccupied, at the time of the fire, within the meaning of the policy. It was insured expressly as "occupied by tenants," and the clause in question should not be construed as including within the prohibition a vacancy or non-occupancy which is usual and reasonably necessary in changing from one tenant or occupant to another. The occupancy by tenants necessarily implies changes in the tenancy, and hence the question is whether the interval between the going out of one tenant and the coming in of another, is an unreasonable one, in view of all the circumstances; and the rule must be the same whether the incoming occupant is the owner or a lessee.

2. The policy must be construed with reference to the usual incidents of occupancy by tenants, and the company must be presumed to have known them: Citizens' Ins. Co. v. McLaughlin, 53 Pa. 485; Grandin v. Insurance Co., 107 Pa. 26; Pittsburgh Ins. Co. v. Frazee, 107 Pa. 528. The true distinction, in construing such a provision, is between a permanent and a temporary non-occupancy: Lebanon Ins. Co. v. Leathers, 20 W. N. 107; Mears v. Insurance Co., 92 Pa. 15; Franklin Ins. Co. v. Kepler, 95 Pa. 492; Ins. Co. of N. A. v. Hannum, 1 Mona. 369. McClure v. Insurance Co., 90 Pa. 277, is distinguishable in several particulars, among others by reason of the fact that the policy substantially stipulated that a mere removal of the tenant should create a vacancy.

3. Notwithstanding a stipulation in a policy that nothing less than an express agreement, indorsed thereon, shall be construed as a waiver of any of its conditions, parol testimony is admissible to show a waiver by acts in pais: Gould v. Insurance Co., 134 Pa. 570; McFarland v. Insurance Co., 134 Pa. 590; Coursin v. Insurance Co., 46 Pa. 323; Niagara Ins. Co. v. Miller, 120 Pa. 504; Buckley v. Garrett, 47 Pa. 212; Elkins v. Insurance Co., 113 Pa. 386: Elliott v. Insurance Co., 117 Pa. 548; Philadelphia Tool Co. v. Assurance Co., 132 Pa. 236; Oshkosh Gas-Light Co. v. Insurance Co., 71 Wis. 454. In the present case, if any right of forfeiture existed, it was waived by proceeding to an appraisement and by requiring proofs of loss at an expense to the assured. The provision as to the ef-

fect of the appraisement stands on no better ground than the provision that there shall be no waiver except in writing. It is substantially the same as the agreement to appraise, in Mc-Farland v. Insurance Co., 134 Pa. 594.

*Mr. A. J. Colborn, Jr.,* (with him *Mr. Samuel B. Price,*) for the appellee :

1. There is no dispute that the house was vacant at the time of the fire, and had been vacant for several days, without the consent of the insurance company. In such circumstances, the policy provides that the insurance shall be void, and this condition is reasonable and obligatory upon the assured : McClure v. Insurance Co., 90 Pa. 279. The testimony offered, as set forth in the first, second and fifth assignments of error, to show the intentions of the plaintiff, was irrelevant; her intentions are immaterial in view of the fact that the house was vacant and that she did not obtain the consent of the company to the vacancy : McClure v. Insurance Co., 90 Pa. 280; Harrison v. Insurance Co., 9 Allen 231 ; Keith v. Insurance Co., 10 Allen 228; Corrigan v. Insurance Co., 122 Mass. 298.

2. The agreement for the appraisement could not be a waiver, unless parties are prohibited from agreeing that certain things done by them shall not waive other rights connected with the policy and loss. There was nothing misleading about the appraisement. Both parties knew that it was for the purpose of fixing the amount of loss only, and that by making it the company in no way admitted any liability under the policy. Nor was the fact, if it could be proved, that the agent directed proofs of loss to be made out, a waiver: if proper proofs had been made, they would have established a breach of the condition relating to occupancy : Niagara Ins. Co. v. Miller, 120 Pa. 517.

3. To effect a waiver, there must be an intention to waive the forfeiture, or acts inconsistent with the exercise of the right to forfeit: Niagara Ins. Co. v. Miller, 120 Pa. 504 ; Diehl v. Insurance Co., 58 Pa. 443; Buckley v. Garrett, 47 Pa. 204. And the condition in regard to occupancy was a warranty, upon the literal fulfilment of which the validity of the entire contract depended: May on Insurance, § 156. On all the evidence in the case, the court below was obliged, either to di-

rect a verdict for the defendant, or to make a new contract for
the parties.

OPINION, MR. JUSTICE GREEN:

On the trial of this case, the plaintiff testified that she went
to the house in question on Wednesday, the day before the fire;
that she had received no notice from her tenant, Mrs. Berheight,
that she intended to leave the house, and that she, the plaintiff,
had no knowledge until that day that the tenant had left.   She
was corroborated in this statement as to her going to the house
on that Wednesday by the witness Mrs. Brown, and there was
no testimony in the case contradicting either the plaintiff or
Mrs. Brown on this subject.    Both of these witnesses also tes-
tified that there were several articles of furniture belonging to
the plaintiff in the house at that time, and that the plaintiff was
engaged and remained in the house all day, until 6 o'clock in
the evening.    Although Mrs. Berheight at first said that it was
about a week after she moved before Mrs. Doud came over to
the house, she was unable to fix the time definitely, either when
she finished moving, or on what day it was she saw Mrs. Doud
at the house.    She said she would not be precise as to a day or
two ; she was sure she moved early in the week, and thought
it was Friday when Mrs. Doud came over; but she was clearly
wrong in this, as the fire occurred during the night of Thurs-
day.    She said it was either Monday or Tuesday that she moved,
and that it took her one or two days to finish moving.    But Mrs.
Brown testified that Mrs. Berheight moved the last of her things
out two days before the fire, and that Mrs. Doud came to the
house on the day before the fire ; so that, if her testimony was
correct, Mrs. Doud came to the house the next day after Mrs.
Berheight left, and remained all day.

This being the state of the admitted testimony, Mrs. Doud
offered to prove that she went to the village where the house
was, desiring to get possession of part of the building for her-
self and an invalid son ; that, upon learning that Mrs. Berheight
was moving out, she went to her home in Dunmore, and imme-
diately packed such household and personal articles as she
needed, with the intention of moving into the house on Friday
morning; and that she had her things packed on Thursday,
ready to move on Friday, but was prevented from doing so by

the fire.   This offer of proof was rejected.   Another offer was then made covering substantially the same facts, and also that she had been advised by her physician to take her invalid son to the village of Drinker, where the house was; and, further, that she had placed a man in charge of the house on Wednesday, to remain until Friday.   This offer also was rejected.   She also made a similar offer of proof by her daughter, that she was engaged all day Thursday in picking up and packing household articles preparatory to the moving on Friday.   This offer also was rejected.   The question that arises is, whether, under all the facts proved and offered to be proved, there was such a vacation of the premises as avoided the policy under the sixth clause thereof.   The language of the clause is as follows :

" 6. This policy will not cover unoccupied buildings, unless insured as such, and if the premises insured shall be vacated, without the consent of the company indorsed hereon, . . . . the policy shall cease and determine."

It is argued for the appellee that the case of McClure v. Insurance Co., 90 Pa. 277, decides the question adversely to the appellant.   Upon examining that case, however, it will be found that there is a marked difference in its facts from those of the present case.   There, an absolute vacation of the premises had taken place, in the very manner prohibited by the contract, by the "removal of the occupant," and there was no substitution of another occupant, either as tenant or owner, actually proceeding when the fire occurred.   The very contingency which in express terms avoided the policy had occurred.   The vacation of the premises was complete, and had been for several days ; the owner did not occupy, or propose or intend to occupy the house himself, and no new tenant had been obtained or was even being negotiated with.   There was nothing but an intention and an effort of the owner to engage a new tenant.   Nothing had been accomplished, however, in that direction, when the fire took place.   We held that it was the duty of the insured, in those circumstances, to obtain the consent of the company to the vacancy, and, as no effort of that kind was made, the literal terms of the policy prevailed, and it was avoided.

But in the present case the facts were entirely different. The owner had several articles of furniture in the building, and a few of those of the departed tenant had not yet been

removed.   The owner immediately took possession of the house on the day before the fire, remaining until evening, having first sent for and obtained the key from the departing tenant.   She also immediately announced her purpose of occupying the house as soon as she could get her household goods removed, and at once commenced and continued through the whole of Thursday the preparation of her goods for removal on the next day, Friday.   Moreover, she offered to prove, but was not permitted to do so, that she placed a man in charge of the house on Wednesday to remain until Friday.   In such circumstances as these, we do not consider that there was any vacation of the premises, or any more of a cessation of occupancy than would necessarily arise upon a change of tenants.   A reasonable time must necessarily be allowed to carry out such a change without imposing upon the insured the penalty of either an intended or a permitted vacation of the premises.   There was no intended vacation here, in any view of the facts, and there was no real cessation of occupancy.   The occupancy of the owner on Wednesday was part of a continuing occupancy, to be proceeded with on Friday, and only delayed by the absolute necessity of obtaining and removing the owner's goods from her home, seven miles distant.   Her absence from the building was only for a temporary purpose, which was unavoidable, but which was in no sense an abandonment of occupancy.

In this respect the case is entirely analogous with the case of Franklin Ins. Co. v. Kepler, 95 Pa. 492, where we held that the absence of the insured from his dwelling from Wednesday until Monday, to attend a funeral, was not a breach of the condition of his policy almost identical with that of the present policy.   The same principle was enforced in Lebanon Ins. Co. v. Leathers, 20 W. N. 107, where there was a cessation of the operations of a tannery for three months, and a condition of avoidance if the property should cease to be operated as a tannery.   We held that " a mere temporary suspension of the business of the establishment for the purpose of making repairs, or from want of a supply of materials, is clearly not ceasing to operate the establishment, within the meaning of the policy."   In the case of Ins. Co. of N. A. v. Hannum, reported in 1 Mona. 369, but not reported elsewhere, with the same condition as to vacancy as in this case, the tenant moved out on April 1st, at

the expiration of his term, and the premises were rented to another tenant for a term commencing at that date, but the new tenant did not move in at once, but made his arrangements to move in on April 5th. The house was burnt on April 3d. The court below ruled that "the period of time during which the house was not occupied, or rather the condition in which it was during those two days, was not such a cessation of the occupancy contemplated by the policy, for such a length of time, as would vitiate the policy." This court affirmed the judgment for the plaintiff without hearing the defendant in error.

We are clearly of opinion that there was no breach of the condition of this policy prohibiting the vacation of the premises. We sustain the first, second, fifth and sixth assignments of error. As we hold that there was no breach of condition arising upon the facts of the case, it is not necessary to consider the question whether there was a waiver of the condition in question. The rejected offers of testimony should all have been received except the one covered by the fourth assignment, which was a mere general offer, without any specific facts stated.

Judgment reversed, and venire de novo awarded.