[No. 8958.    Department One.    January 11, 1911.]

HARRY SILVER, *Respondent*, v. LONDON ASSURANCE

CORPORATION, *Appellant.*[1]

INSURANCE—FIRE INSURANCE—VACANCY OF BUILDING—EVIDENCE OF
OCCUPATION—SUFFICIENCY.    The evidence sufficiently shows that a
saloon was not vacant and unoccupied at the time of a fire, Saturday
night, where a witness testified that he had rented it on the Mon-
day before, had cleaned and arranged it on Friday and Saturday,
had bar fixtures and part of his stock in the building, and had opened
for business and made some sales on Saturday.

SAME.    The evidence warrants a finding that a saloon was not
vacant and unoccupied for ten days prior to a fire on June 28th,
where the sheriff had possession under legal process and put a watch-
man in possession who watched the building for ten or fifteen days,
beginning as late as June 6th or 7th.

SAME—POLICY—"OCCUPIED AS SALOON"—CONSTRUCTION.    A policy
of fire insurance on a building "occupied as saloon," with a for-
feiture clause if vacant for more than ten days, does not require
that the building be occupied as a saloon, the words being descrip-
tive only; and it is not vacant if in the possession of a watchman of
the sheriff under legal process.

SAME—CHANGE OF INTEREST—PLEADING—WAIVER OF OBJECTION.    In
an action on a fire insurance policy, a stipulation forfeiting the
policy in case of change of ownership or interest cannot be urged
unless it is pleaded.

SAME—CHANGE OF INTEREST—INCREASE OF HAZARD—BURDEN OF
PROOF.    Under the clause that a fire insurance policy shall be void in
case of change of interest or possession, except change of occupancy
without increase of hazard, the burden is upon the company to
prove that possession of an officer under legal process increased the
hazard, as it will not be presumed.

SAME—POLICY—BREACH OF CONDITION—VACANCY—REOCCUPANCY.
An insurance policy providing that the same shall be void if the
building be or become vacant or unoccupied and so remain for ten
days, is not terminated, but only suspended during such vacancy,
and has no application to a loss occurring after it was reoccupied.

APPEAL—REVIEW—HARMLESS ERROR.    Where the jury found that
the plaintiff was the owner of a building destroyed by fire, it is not

[1]Reported in 112 Pac. 666.

prejudicial error that the court excluded evidence of the bad fire record of one F., whom the defendant claimed to be the owner of the building.

WITNESSES—CROSS-EXAMINATION. It is not proper cross-examination to question the plaintiff as to his knowledge of a matter constituting defendant's affirmative defense.

TRIAL—INSTRUCTIONS. The words, "now, coming to the other branch of the case," in an instruction, are merely introductory and not objectionable as indicating that the other defenses were immaterial.

Appeal from a judgment of the superior court for King county, Gay, J., entered January 4, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action on a policy of fire insurance. Affirmed.

*H. T. Granger* and *Fred G. Clarke*, for appellant.

*Hughes, McMicken, Dovell & Ramsey*, for respondent.

GOSE, J.—This is a suit upon a fire insurance policy. There was a verdict and judgment for the plaintiff. The defendant has appealed.

On the 4th day of February, 1908, the appellant issued to the respondent its policy of insurance for the term of one year from that date, whereby it insured him against loss by fire to an amount not exceeding $1,300, on two one-story frame buildings, each occupied as a saloon. The two buildings were separated by a partition only, and were insured for $650 each. On the 28th day of June, 1908, both buildings were totally destroyed by fire. The appellant resists recovery upon two grounds: (1) It is alleged that the respondent did not own the property at the time the policy was issued or at the time of the fire, but that it was at all times owned by one Finkelberg, who, on account of a bad fire record, could not obtain insurance, and that for the purpose of obtaining the policy he conspired and agreed with the respondent to, and did, convey the property to him, and that the policy was taken for the benefit of Finkelberg; and (2) that the policy provides:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void   .  .  . if a building herein described, whether intended for occupancy by the owner or tenant, be or become vacant or unoccupied,. and so remain for ten days;"

and that at the time of the fire both buildings were vacant and unoccupied and had been unoccupied for a period of more· than ten days.   The reply denied the ownership of Finkelberg, denied that the buildings were vacant and unoccupied at the time of the fire, and admitted that the policy contained the· provision quoted.

. It is earnestly insisted that the record discloses that neither of the buildings was occupied at the time of the fire.   We· think that there is evidence which warranted the jury in concluding that both buildings were occupied at that time. Kichinko, a witness for the respondent, testified that he had rented one of the buildings for a saloon, on Monday before the fire, which occurred the following Saturday night; that he cleaned and arranged it on Friday and Saturday; that he had the bar fixtures, stove, chairs, pool tables, glasses, cigars, and a barrel of soda in the building; that he had a license, and that he opened the place for business on Saturday, and made some sales.   The sheriff had possession of the other building on a legal process, and had put a watchman in possession. The watchman testified that he had charge of this building in 1908; "I should judge along the beginning of June," and that "I watched in there from ten to fifteen days.  I am not sure.   I ain't certain of it;" and that, if he remembered correctly, it was unoccupied eleven or twelve days, but whether before he began watching or after his duties had terminated' does not clearly appear.   The jury was warranted in inferring from his testimony that he began watching the building· as late as the 6th or 7th of June, and that his duties ended' fifteen days later, which would be less than ten days before· the fire.   It cannot, therefore, be ruled, as a matter of law, that he was not in possession within ten days before the date· of the fire.

The appellant, however, contends that, if the watchman was in charge of the building within ten days before the date of the fire his possession was not such an occupancy as the contract and the law contemplates. The language of the policy, which is the same as to both buildings, is "$650 on the one-story frame building occupied as a saloon." It is said that the word "occupied" should be given its ordinary and popular meaning, and as applied to this building means such occupancy as ordinarily attends or is exercised over a saloon building while being used as such. The vice of this position is that the policy does not provide that the building shall be devoted to saloon purposes. The words "occupied as a saloon" are words of .description only. As was said in *Burlington Ins. Co. v. Brockway*, 138 Ill. 644, 28 N. E. 799:

"If the company desired to make its liability contingent upon the continued occupancy of the house as a dwelling, it would have been very easy and natural to have stated that among the other conditions expressed."

In that case the policy in describing the property insured used the words, "on the two-story shingle-roof frame building while occupied by assured as a store and dwelling house." Some weeks before the fire, the building was abandoned as a dwelling, but continued to be occupied as a store until it burned. The policy provided, as in this case, that it should be void "if the premises hereby insured are or shall hereafter become vacant or unoccupied," without notice, consent, etc. It was contended that the company undertook to insure the building only so long as it continued to be occupied both as a store and a dwelling, and in meeting this contention the court said that a provision in a policy will not be construed to be a continuing warranty unless expressed in apt words. In *Doud v. Citizens' Ins. Co.*, 141 Pa. 47, 21 Atl. 505, 23 Am. St. 263, the tenant moved out of the house on Tuesday, the owner went to the house and stayed during Wednesday, placed a man in charge, went to her home and packed on Thursday preparatory to moving into the house on Friday, and was

prevented from doing so by the burning of the house on that day. Her offer to prove that she put a man in charge of the house on Wednesday, to remain until Friday, was denied. This was held to be error. See, also, *Traders' Ins. Co. v. Race* (Ill.), 29 N. E. 846; *Stensgaard etc. v. National Fire Ins. Co.*, 36 Minn. 181, 30 N. W. 468; *Shackelton v. Sun Fire Office*, 55 Mich. 288, 21 N. W. 343, 54 Am. Rep. 379; *German Ins. Co. v. Davis*, 40 Neb. 700, 59 N. W. 698.

In the *Shackelton* case, a watchman or overseer was in charge of the building when the fire occurred. This was deemed a sufficient occupancy. The appellant has cited a number of cases which, it contends, show that the possession of the watchman was not an occupancy within the meaning of the policy. There is a conflict in the authorities, and an attempt to harmonize them would be futile. However, the facts in the cases cited differ so materially from the facts here that it may be said that they state no more than general principles. Each case must be determined largely upon its own peculiar facts. Viewing the case from the standpoint of the object to be attained, viz., to guard against an increase of hazard, caused by nonoccupancy, it would seem to be a common-sense view that the possession of a watchman, acting under a sheriff under legal process, would be such an occupancy as would satisfy the burden imposed by the policy upon the insured. The burden of proving that the buildings were unoccupied was upon the appellant.

It is said that the court erred in instructing the jury that the building was not unoccupied while it was in charge of an officer of the law. In urging this view, the appellant relies upon another provision of the policy, in the following words:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if any change other than by the death of an insured take place in the interest, title or possession of the subject of insurance (except change of occupancy without increase of hazard) whether by legal process or judgment or by voluntary act of the assured or otherwise."

The point is not well taken, (1) because the clause was not pleaded and is therefore not an issue; and (2) there is no evidence that the change of occupancy increased the hazard. The burden was on the appellant to prove that fact. It will not be presumed to follow from the possession of an officer of the law. *Hoover v. Mercantile Town Mut. Ins. Co.*, 93 Mo. App. 111, 69 S. W. 42. In the cases cited by the appellant under this head, there was a change of title and there were no exception clauses in the policies.

The testimony shows that, after the policy was issued, both buildings were unoccupied for a period of more than ten days. As we have said, it also shows that one of the buildings was in the possession of a tenant at the time of the fire, and that there is no direct evidence that the other building was not in the possession of the watchman within ten days preceding that date.

It is contended that a vacancy for the period of ten days terminates the policy, and that its operative force is not restored by a reoccupancy. Several authorities are cited which support that view. The question, however, is no longer an open one in this state. In *Port Blakely Mill Co. v. Springfield Fire & Marine Ins. Co.*, 59 Wash. 501, 110 Pac. 36, this court, after an exhaustive review of the cases, announced the rule that a provision in a policy of insurance, to the effect that the policy shall be void upon the doing of a prohibited act or the failure to do an act agreed to be performed by the insured, only suspends the operation of the policy while the condition is broken, and has no application to a loss occurring at a time when there is no breach of the contract. Among others, the following authorities are cited to support the text: *Hinckley v. Germania Fire Ins. Co.*, 140 Mass. 38, 1 N. E. 737, 54 Am. Rep. 445; *Insurance Co. of North America v. Pitts*, 88 Miss. 587, 41 South. 5, 117 Am. St. 756, 7 L. R. A. (N. S.) 627; *Athens Mut. Ins. Co. v. Toney*, 1 Ga. App. 492, 57 S. E. 1013; *Traders' Ins. Co. v. Catlin*, 163 Ill. 256, 45 N. E. 255, 35 L. R. A. 595; *Born v. Home Ins. Co.*, 110

Iowa 379, 81 N. W. 676, 80 Am. St. 300; *Sumter Tobacco Warehouse Co. v. Phoenix Assur. Co.*, 76 S. C. 76, 56 S. E. 654, 121 Am. St. 941, 10 L. R. A. (N. S.) 736.

In the *Hinckley* case, the insurance company sought to defeat a recovery because the insured conducted a saloon business without a license for a short time. He had a license when the policy was issued and when the fire occurred. The property insured was saloon equipment, furniture, fixtures and stock. In considering this contention, the court said that the word "void," as used in policies of insurance, does not signify under all circumstances an absolute and permanent avoidance of a policy which has begun to run, but that it may be held to mean a temporary suspension of liability; and, quoting from 1 Phillips on Insurance, § 975:

"To carry it further is to inflict a penalty upon the assured, and decree a gratuity to the insurer, who is thus permitted to retain the whole premium when he has merited but part of it."

In the *Pitts* case, while the policy was in force, the premises were vacant at one time for more than ten days, but were occupied when the fire occurred. The policy provided that it should be void if the building "be or become vacant or unoccupied and so remain for ten days." The court said that, if the loss had occurred during the prohibited vacancy, there could be no recovery; but that occupancy revived the insurance, and that any other rule would be a harsh construction of a technical word. In the *Toney* case, it was held that the policy was suspended during the period of the prohibited vacancy, and revived by reoccupancy. The court said:

"But we place our decision squarely on the proposition that the violation of the condition as to vacancy in this case in no wise contributed to the loss. The increased hazard existed while the house was vacant, and when the house was reoccupied the danger from vacancy was terminated, and the policy again attached and became of binding effect."

The point is made that the court erred in sustaining an objection to a question put to a witness as to Finkelberg's fire

record, and in denying the appellant the right to cross-examine the respondent as to his knowledge of that fact. These contentions have no force, in view of the fact that the jury necessarily found that the respondent was the owner of the property. The court instructed the jury that, if they believed that the respondent and Finkelberg conspired to conceal the true ownership of the property; that it was placed in the name of the respondent for that purpose; and that the policy was issued with that fact concealed, there could be no recovery. Moreover, the appellant offered evidence that Finkelberg had a bad fire record, and the respondent offered no countervailing evidence. The question put to the respondent was not proper cross-examination. If Finkelberg had a bad fire record, that was a part of the affirmative defense, and could not be established upon the cross-examination of the respondent. The real issue under this defense was, whether the respondent owned the property. If he did, the good or bad fire record of Finkelberg would be a matter of no concern to the appellant.

The court, in instructing the jury, said: "Now, coming to the other branch of this case which the defendant relies on or has pleaded," etc. It is said that the language quoted conveyed the impression to the jury that the other defenses pleaded were immaterial. It is obvious that the statement was merely introductory to another phase of the case upon which the court desired to instruct.

The view we have taken of the facts of the case makes it unnecessary to determine whether the vacancy of one of the buildings for more than ten days before the fire would defeat a recovery on either or both buildings, and also the technical meaning of the words "if a building herein described" becomes vacant or unoccupied.

The judgment is affirmed.

RUDKIN, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.