## Hall, Appellant, *v*. Sugar Valley Mutual Fire Ins. Co.

*Insurance—Fire insurance—Ownership—Sale of property—Executory contract of sale.*

A mere executory contract of sale does not amount to such a change of ownership as will render void a policy of fire insurance which requires that the interest of the assured shall be that of "unconditional and sole ownership," and stipulates that "the sale of the property insured under this policy shall cancel such policy immediately."

*Insurance—Fire insurance—Dwelling house and barn—Vacation of dwelling house—Increase of risk.*

Where a dwelling house, barn and other farm buildings are insured under one policy, and the barn and other farm buildings are burned at a time when the insured had permanently vacated the dwelling house, and left it unoccupied, no recovery can be had against the insurance company for the loss of the barn and other farm buildings where the policy provided that all buildings or premises insured "must be kept occupied by the owners, and as

soon as any such buildings, or premises become vacant, or unoccupied by the owner, or a tenant under such owner, all liability on account of any policy of insurance issued thereon shall cease and determine," and also provided that the policy should be void if the hazard was increased by any means within the control or knowledge of the insured.

Argued Feb. 29, 1916.   Appeal, No. 24, Feb. T., 1916, by plaintiff, from judgment of C. P. Lycoming Co., Dec. T., 1914, No. 120, for defendant on case stated in suit of Roscoe C. Hall v. Sugar Valley Mutual Fire Insurance Company.    Before ORLADY, P. J., HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Affirmed.

Case stated to determine liability on a policy of fire insurance.   Before WHITEHEAD, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for defendant on case stated.

*William Ellis Haines*, for appellant.—The contention of the appellant in this case is, that the buildings, which were burned, were never vacated, and were continually occupied by the farmer who was the representative of either the vendor or the vendee, (it matters not which), which contention is sustained by the court below; and that therefore there was no such vacancy or unoccupancy of the premises at the time of the fire, as to avoid the policy: Ins. Co. of North America v. Hannum, 1 Monaghan 369; Doud v. Citizens Ins. Co., 141 Pa. 47; Roe v. Dwelling House Ins. Co., 149 Pa. 94; McClure v. Watertown Fire Ins. Co., 90 Pa. 277.

*Henry Hipple*, with him *H. S. Furst*, for appellee.— The nonoccupancy of one of the buildings, even though the one not destroyed by fire avoided the policy and ren-

dered the company not liable: Gottsman v. Ins. Co., 56 Pa. 210.

Opinion by Williams, J., October 9, 1916:

The single assignment of error raises the question of the correctness of the judgment of the court below upon a case stated.

Plaintiff insured his dwelling house, barn and other farm buildings with the defendant. The policy provided that it would be void if the interest of the insured be other than that of unconditional and sole ownership; that a sale of the property canceled the policy; that all buildings and premises insured must be kept occupied by the owner, and as soon as they became vacant or unoccupied by the owner, or a tenant under the owner, all liability of the company under the policy ceased and determined. It also provided that the policy should be void if the hazard was increased by any means within the control or knowledge of the insured.

On May 18, 1914, plaintiff entered into an agreement in writing to sell his farm and buildings to Reed O. Steely for $3,200, possession to be given July 1, 1914, if paid for prior to that time as agreed. Prior to June 18, 1914, $600 had been paid on account. On June 18, 1914, plaintiff sold by public auction, his cattle, stock and farming implements, retaining his household goods and one horse. June 22, 1914, he removed his goods from the insured premises to a house in Hughesville three miles distant and continued to dwell therein with his family from that date. Neither he, nor his family nor any one for him, occupied the house after June 22, 1914, and no one was in charge thereof, or on the premises or in the house during the night time. The dwelling house was locked and the plaintiff kept the key. On June 24th and 25th he came from Hughesville, picked some cherries and gathered together some tools to take to Hughesville. One Ray Yeagle, living about one-fourth of a mile from the buildings insured, was

taking care of the crops under an arrangement with Hall and Steely, whereby Yeagle was to farm the place on shares, doing the work necessary on the crops prior to July 1, 1914, and if the agreement between Hall and Steely was not carried out, Yeagle would then farm for Hall, but if it was carried out he would then farm for Steely. On June 26, 1914, and prior thereto, Yeagle had done the necessary work in cultivating the crops on the farm. He purchased some tools and materials at Hall's public sale, which he left in the barn on the farm, and on June 26, 1914, placed therein a load of phosphate which was his individual property. Yeagle did not have access to the dwelling house or occupy or live therein.

No notice of the agreement of sale or of his removal from the farm was given by the plaintiff to the insurance company. On Friday night, June 26, 1914, at about 10 : 30 o'clock, the barn, straw shed, two wagon sheds, corn-crib, chicken house, hog pen and the rye straw were totally destroyed by fire, the origin of which is unknown. Due notice of the fire, together with the proofs of loss, were given to the defendant in accordance with the terms of the policy.

Two questions of law are involved: 1. Was the policy void by reason of the agreement of sale?

This question was not strongly urged, but there is no doubt that a mere executory contract of sale does not amount to such a change of ownership as would render the policy void: Ins. Co. v. Updegraff, 21 Pa. 513; Walter v. Sun Fire Office, 165 Pa. 381.

2. (a) Was there such a vacancy or nonoccupancy as avoided the policy; or (b) increased the hazard of the risk?

The farm or dwelling house was vacant when the fire occurred. It was, so far as the facts in the case stated show, a permanent, and not a temporary vacancy such as would be excused where there was a change of tenants as in Ins. Co. v. Hannum, 1 Mona. 369; Doud v. Ins. Co., 141 Pa. 47, and Roe v. Dwelling House Ins. Co., 149 Pa.

94. The agreement with Yeagle, supra, shows a farming
for Steely if he consummated the purchase, and a farming
for Hall if he did not. Indeed, there is nothing to show
when, if ever, either the seller or the buyer were to occupy
the vacant farm dwelling house. To hold in such a case
that because the fire occurred within three or four days
after the premises insured were vacated for an indefinite
period, was not a breach of the policy, would be to render
one of the inducing reasons for a company insuring the
property useless and unenforceable. Such an indefinite
vacation of the property was held to be a breach of the
covenant in McClure v. Watertown Fire Ins. Co., 90 Pa.
277, and Hardiman v. Fire Assn., 212 Pa. 383. In the
first case the fire occurred within a few days after the
tenant had moved out. In the latter the policy con-
tained a ten-day nonoccupancy clause. POTTER, J., said
(391) : "Under the terms of the policy, if the insured de-
sired to vacate the property for more than ten days he
was bound to give notice to the company. It might then
give its consent, or cancel the policy. Failure to notify
the company deprived it of its option in this respect, and
gave it the right to treat the policy as void from that
time."

We are not unmindful of the attitude, which is taken
towards insurance contracts by our courts, as expressed
in McClure v. Watertown Fire Ins. Co., 242 Pa. 59, where
ELKIN, J., said (67) : "We deem it wise to settle as far as
possible this much mooted question by adopting the rule
of the reasonable enforcement of insurance contracts
rather than to declare a forfeiture thereof, if this can be
done without doing violence to the intention of the con-
tracting parties." It is clear, however, that the vacancy
in the present case was intended to be permanent, and
being so, was of such a nature, no notice having been
given to the company, that it amounted to a breach of the
covenant in the policy. Any other construction would do
violence to the clearly expressed intent of the policy.

The remaining question is: Did the nonoccupancy

of the dwelling house, which did not burn, increase the hazard as to the buildings that did burn, within the intent and meaning of the covenants of the insured? In Stoltenberg v. Continental Ins. Co., 106 Iowa 565, the court had the same question to consider. The court there said: "We understand the appellant to say that the control and use of the premises by Smith as tenant without living in the house would obviate this condition of the policy (that is, the clause that the policy would be void if the buildings insured be or become vacant or unoccupied). To this we cannot assent. Occupancy of a house implies its actual use as a dwelling house, and that of the barn,—its use as is ordinarily incident to a barn belonging to an occupied house. The insurer had the right to the care involved in such an occupancy." The same principle was applied in Ashworth v. Builders Mut. Ins. Co., 112 Mass. 422; Hartshorne v. Agricultural Ins. Co., 50 N. J. Law 427, and Sonneborn v. Ins. Co., 44 N. J. Law 220.

We are constrained to adopt the reasoning in these cases and hold that the true intent and meaning of the policy was that the dwelling should be and remain occupied, and not being so, the hazard was increased and the policy rendered void.

The assignment of error is overruled and judgment affirmed.