247 F.2d 921
 Morgan STIVERS, Appellant,
v.
NATIONAL AMERICAN INSURANCE COMPANY, a corporation, Girard
Insurance Company of Philadelphia, Pennsylvania, a
corporation, The Insurance Company of the State of
Pennsylvania, a corporation, Queen Insurance Company of
America, a corporation, and Does I to X, inclusive Appellees.
 No. 15230.
 United States Court of Appeals Ninth Circuit.
 Aug. 15, 1957, Rehearing Denied Sept. 18, 1957.
 
 Simpson, Wise & Kilpatrick, George E. Wise, Harwood Stump and Henry T. Logan, Long Beach, Cal., for appellant.
 Augustus Castro, San Francisco, Cal., for appellees.
 Before LEMMON, CHAMBERS, and HAMLEY, Circuit Judges.
 HAMLEY, Circuit Judge.
 
 
 1
 The owner of a fruit-packing plant brought this action against four fire insurance companies which had rejected fire-loss claims filed under policies which they had issued. After a nonjury trial, judgment was entered for defendants. Plaintiff appeals.
 
 
 2
 The question for determination here is whether the policies were in suspension at the time of the fire because of asserted noncompliance with policy provisions relating to occupancy of the insured buildings. The trial court held that the policies were in suspension.
 
 
 3
 Appellant, Morgan Stivers, was the owner of an orange packing plant in Tulare county, California. The plant consisted of a packing house and loading platform, equipment, stock, bunk house, and storage building.
 
 
 4
 Effective December 1, 1952, he obtained four fire insurance policies insuring the various items comprising the plant in the aggregate amount of $40,000. These policies, which were to run for three years, were issued in amounts ranging from $7,500 to $12,500 by the four appellees, National American Insurance Company (National), Girard Insurance Company of Philadelphia (Girard), The Insurance Company of the State of Pennsylvania (Pennsylvania), and Queen Insurance Company of America (Queen).
 
 
 5
 The entire packing plant, except for the bunk house, was destroyed by fire on October 13, 1954, occasioning a loss in excess of $160,000. Appellant filed proofs of loss with appellees in the following amounts: National, $8,000; Girard, $10,000; Pennsylvania, $7,500; Queen, $12,500; total $38,000. Each company rejected the claim filed against it, on the ground that appellant had not complied with the occupancy provisions of the policies.
 
 
 6
 The policies in question, issued on the California standard form, contain insuring clauses which are partly printed and partly typewritten. In each policy, the insuring clause includes coverage on a 'Frame Building while occupied as Packing House and Loading Platform.'
 
 
 7
 The insuring clauses of the Girard, Pennsylvania, and Queen policies include coverage on equipment. In the Girard policy, this coverage reads 'Equipment, pertaining to Insured's occupancy as Packing Company all only while contained in, on or attached to the above described building.' In the Pennsylvania and Queen policies, the equipment coverage reads the same, except that the typewritten words 'Packing Company' are omitted.
 
 
 8
 The insuring clauses of the National, Pennsylvania, and Queen policies include coverage on stock. In the National and Pennsylvania policies, this coverage reads 'Stock, consisting principally of Field Supplies and Boxes all only while contained in, on or attached to the above described building.' In the Queen policy, this coverage reads 'Field Boxes and Supplies.'
 
 
 9
 The insuring clause of the National policy includes coverage on a bunk house. It reads 'Bunk House Situate: On Above Described Premises.'
 
 
 10
 The insuring clauses of the National, Pennsylvania, and Queen policies include coverage on a storage building. In the National policy, this coverage reads 'Storage Building Situate: On Above Described Premises.' In the Pennsylvania and Queen policies, this coverage reads 'D Class Storage Building.'
 
 
 11
 Each of the policies also contains the following standard provisions relating to occupancy:
 
 
 12
 'Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring * * * (b) While a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days. * * *'
 
 
 13
 '21. Vacancy - Unoccupancy Clause: Permission is granted to remain vacant or unoccupied without limit of time, Except As Follows: * * * (2) If the subject of insurance (whether building or contents or both) is a cannery, fruit, nut or vegetable packing or processing plant * * * permission is granted (a) to remain vacant for not to exceed sixty (60) consecutive days, and (b) to remain unoccupied But Not Vacant for not to exceed ten (10) consecutive months * * *.'
 
 
 14
 Since the items insured under these policies comprised a fruit packing plant, it was permissible, under the last-quoted provision, for the insured buildings to remain unoccupied but not vacant for not to exceed ten consecutive months. It is conceded that the buildings were not vacant at the time of the fire. But had they been 'unoccupied,' as that term is used in the policies, during the ten months immediately proceding the fire?
 
 
 15
 The facts to be considered in determining this question are not in dispute. No fruit had been packed in the plant since August, 1949. This was more than five years prior to the fire. The buildings, however, had been kept in repair, and the plant was maintained in an operable state.
 
 
 16
 Appellant arranged to have someone live on the premises so that property could be watched. A family was living on the premises at the time of the fire, having moved there about three months prior thereto. This family, consisting of a man, his wife, and a sixteen-year-old son, lived in a trailer which was placed about fifty feet from the packing house. Members of the family were instructed by appellant to keep unauthorized persons off the property. Following these instructions, strangers were required to leave the premises on several occasions.
 
 
 17
 The family was not provided with keys to the buildings, and had no access to them. While there was usually at least one member of this family on the premises, there were occasions when all three were away. All three were engaged in farm work some distance from the packing plant on the morning of the fire.
 
 
 18
 Whether these undisputed facts establish occupancy or non-occupancy, within the meaning of the fire insurance policies, is a question of law. Farmers Fire Insurance Co. v. Farris, 224 Ark. 736, 276 S.W.2d 44. Resolving this question of law in favor of appellees, the trial court held, in effect, that the buildings had not been occupied within the ten months preceding the fire because, during that period, the buildings had not been operated as a fruit packing plant.
 
 
 19
 Since this is a diversity case arising in the state of California, the law of that state is applicable. The decisions of the California courts appear to support the conclusion reached by the trial court. In Allen v. Home Ins. Co. of New York, 133 Cal. 29, 65 P. 138, and Arnold v. American Ins. Co., 148 Cal. 660, 84 P. 182, 183, 25 L.R.A.,N.S., 6, it was held that, where the insuring clause refers to a building 'while occupied as a dwelling-house,' the insured may not recover on the policy unless he alleges and proves that the building was so occupied at the time of the fire.[1]
 
 
 20
 If this same process of reasoning is applied here, it follows that, since the insuring clauses cover the principal building 'while occupied as Packing House and Loading Platform,' appellant was required to allege and prove occupancy of that character within ten months preceding the fire. This was not done.
 
 
 21
 The words 'while occupied as Packing House and Loading Platform' are used only with reference to the principal building. This would, however, necessarily include the equipment and stock (except the stock coverage under the Queen policy) because, as to these items, the insuring clauses recite 'all only while contained in, on or attached to the above described building.'[2]
 
 
 22
 We think it would, by necessary implication, also include the bunk house and storage building. The occupancy of the principal building determines the character of the occupancy of the subordinate buildings. See Farmers Fire Ins. Co. v. Farris, 224 Ark. 736, 276 S.W.2d 44.
 
 
 23
 In Foley v. Sonoma County Farmers' Mutual Fire Ins. Co., 18 Cal.2d 232, 115 P.2d 1, a question of occupancy was determined with reference to the then standard clause suspending coverage if the building is unoccupied for more than ten consecutive days. No reference was made to any provision in the insuring clause relating to occupancy. The question presented was whether lack of the physical presence of authorized persons within the building for thirteen days immediately preceding the fire suspended the coverage. The court held that it did not where, as in that case, the absence was of a temporary nature, the plaintiffs intending to return and use the building for dwelling purposes.[3]
 
 
 24
 The significance of this decision, in so far as our case is concerned, lies in the fact that the court determined the question of occupancy with reference to the designed purpose of the insured building. It did so notwithstanding the apparent absence of (or at least without relying upon) explicit words in the insuring clause calling for occupancy of a particular kind.
 
 
 25
 On like reasoning, it would seem that, even in the absence of an explicit provision in the insuring clause, the sufficiency of the occupancy is to be determined with reference to the designed or described purpose of the insured building. Needless to say, the presence of the family in a trailer house on the premises had no relation to the designed or described purpose of appellant's buildings.
 
 
 26
 While this seems to be the purport of the California law, it is unnecessary for us to decide whether occupancy of a building for a purpose other than its designed or described purpose inevitably suspends the policy. The decisions reviewed above teach, at the very least, that buildings designed for human occupancy, whatever the purpose, are not 'occupied' unless (1) authorized persons are physically present therein for a reasonable portion of the period during which occupancy is required, or (2) if such persons are not present therein during the required period of occupancy, their absence is temporary in nature and consistent with the use of the building for its designed purpose. This minimum requirement for occupancy was not met in this case.
 
 
 27
 Appellant contends, further, however, that, whatever may be our determination as to the legal meaning of the term 'occupied,' he had relied upon the assurances of appellees' authorized representatives that presence of the trailer family would constitute occupancy within the meaning of the policies. He accordingly argues that, by virtue of an agreement, waiver, or estoppel, appellees are now precluded from questioning the sufficiency of the 'occupancy' represented by the presence of the trailer family on the premises.
 
 
 28
 The policies in question had been ordered through an insurance agency operated by Truman B. Stivers, a nephew of appellant. He was, as the trial court found, a designated agent of National and Girard. While the trial court made no finding as to the scope of Truman Stivers' authorization, the undisputed evidence shows that he was a general agent for National and Girard, without limitation. It is conceded, and the trial court found, that Truman was not an agent for Pennsylvania and Queen.
 
 
 29
 The trial court also found that Truman Stivers was the agent of appellant with respect to the placing of all of this insurance. Whether this finding is correct with respect to Pennsylvania and Queen we need not decide, for reasons which will later appear. With respect to National and Girard, we believe this finding to be clearly erroneous. The undisputed testimony concerning the ordering and obtaining of the National and Girard policies indicates that Truman was acting only as agent for those two companies.
 
 
 30
 The trial court's finding may have been based upon certain statements made by appellant. He testified that Truman 'had been our agent since he had his license.' On cross-examination, he answered 'yes' when asked if Truman 'acted as an agent for you.' The testimony is undisputed that Truman had handled appellant's insurance requirements over a period of years, and in an amount in excess of four million dollars. In our view, the quoted testimony given by appellant was intended only to indicate that Truman was the insurance agent who customarily handled appellant's insurance business. Appellant was referring to 'our agent' in the same sense as he would have said 'our newsboy,' 'our grocer,' or 'our doctor.'
 
 
 31
 The fire insurance policies in question were issued to replace policies issued in 1949 which were due to terminate on December 1, 1952. The 1949 policies had also been obtained through the Truman Stivers agency. About a year after the 1949 policies had been placed, Truman learned, for the first time, that the packing plant was not operating. He then advised appellant that, unless someone was kept on the premises, the insurance would be in jeopardy, and that appellant 'should try and keep somebody in there living on the premises.' Truman testified that he thought that "occupancy' was people actually physically living on the premises.' It was for this reason that he told appellant that 'if he would keep somebody living on the premises his insurance would be all right.'
 
 
 32
 Truman testified that, while the 1949 policies were in effect, he discussed this matter with appellant on several occasions. He also personally checked the packing plant premises, and, when he found that the persons who were supposed to be living on the premises had moved away, he would so advise appellant. The latter would then arrange to have someone else move to the property. Truman testified that, in following this course, he had no intention of deviating from the policy, but supposed that he was abiding by its terms. He stated that he realized that this practice, which was continued after the instant policies were issued, would not meet the requirements for a watchman's service, but believed that it did constitute occupancy.
 
 
 33
 As the time approached to renew or replace the 1949 policies, an employee in Truman's office telephoned an employee in appellant's office and discussed the matter. In the course of this conversation, Truman's employee stated that, since the plant was non-operating, it would be necessary to put someone on the property to live. Appellant's employee who participated in this conversation stated, on cross-examination, that what Truman's employee had said was that there would have to be a 'watchman' on the property at all times.
 
 
 34
 As a result of this conversation, policies of fire insurance, each in the sum of $10,000, were obtained for appellant by Truman Stivers from his principals, National and Girard. Those companies did not desire to take any greater coverage on the packing plant. The Stivers agency therefore contacted Roy A. MacMillan, agent for the Pennsylvania and Queen companies, and obtained through him the other two policies involved in this suit. The Girard and Queen policies were renewals of 1949 policies issued by those companies.
 
 
 35
 While the findings of fact are silent on the point, the memorandum opinion indicates that the trial court accepted as true the undisputed testimony concerning Truman's knowledge that the plant was not operating, and Truman's assurances to appellant as to what would constitute occupancy. The trial court, however, held that appellant had not complied with Truman's advice as to what would constitute occupancy. It was held that the requirement of having someone living on the premises was not fulfilled, because the trailer was at least fifty feet from the plant, the family was not furnished a key to the buildings, and some member was not on the premises at all times.
 
 
 36
 We find nothing in the record to indicate that Truman's advice to appellant required that the family live in one of the buildings, or that the trailer be closer to the buildings. Truman testified that, before the fire, he was familiar with the fact that a trailer family was living on the premises. He testified that he was under the impression at that time 'that the trailer there with the people living in it on the premises was sufficient.' Truman made it a practice to drive by the plant from time to time for the purpose of checking conditions. Presumably he noted the exact position of the trailer, though he did not specifically testify to this effect.
 
 
 37
 There is no testimony to indicate that appellant was advised to supply the family with keys and direct that one of them be present at all times. An employee in Truman's office had told an employee in appellant's office that there should be a 'watchman.' This conversation, considered as a whole, however, indicates that the term 'watchman' was not used in a technical sense. The general purport of the conversation was that someone should be put on the property to live. The evidence indicates that the trailer family did maintain reasonable surveillance, and that at least one member was on the premises most of the time. That is all that Truman told appellant would be necessary to constitute 'occupancy.'
 
 
 38
 We therefore conclude that the finding of the trial court, that appellant failed to follow Truman Stivers' advice as to what should be done to assure continued 'occupancy,' is clearly erroneous.
 
 
 39
 Can National and Girard, which Truman represented as general agent, now be heard to say that his advice was bad, and that something more than what Truman said was sufficient was required, in order to constitute 'occupancy'?
 
 
 40
 National and Girard so argue. They rely chiefly on the standard form provision contained in these policies, to the effect that no provision of the policy may be waived except in writing added to the policy.
 
 
 41
 But this is not a case of attempted waiver. Truman did not advise appellant that an express provision of the policy could be disregarded. Nor did he tell appellant that presence of a trailer family would be accepted as a substitute for the 'occupancy' provision. It was neither his intention nor appellant's to deviate from the terms of the policy. What Truman did, in effect, was to advise appellant as to what National and Girard meant by the 'occupancy' provision of the policies. He told appellant that presence of the trailer family constituted 'occupancy,' as his companies used that term.
 
 
 42
 Where, as here, a general agent of the insurer undertakes to advise a policy holder as to the meaning of a provision of the policy, and what will constitute full compliance therewith, the latter is entitled to rely thereon, unless such advice is in patent conflict with the terms of the policy.[4]
 
 
 43
 Truman Stivers' advice to appellant, that the presence of a trailer family on the premises would constitute occupancy within the meaning of the policy, is not in patent conflict with the terms of these policies. It is not on the basis of any express language in the policies that we have held that the presence of a trailer family did not constitute fulfillment of the occupancy requirement. The conclusion we have reached on that matter is predicated upon the general decisional law, considered in the light of the facts of this case. In such a setting, the assurances of a general agent as to the meaning of a policy provision, though later found untenable as a legal proposition, may be relied upon by a policy holder. When such reliance is shown, as it was here, the insurer is estopped to disavow the construction of the policy which the policy holder was led to accept.
 
 
 44
 We therefore hold that, as to National and Girard, appellant is entitled to a judgment in a sum conforming to the otherwise unchallenged proofs of loss.
 
 
 45
 Since Truman Stivers was not the general agent of Pennsylvania and Queen, his assurances to appellant could not bind them, and it is not so contended. Appellant argues, however, that Roy A. MacMillan, general agent for those companies, was put on notice that the plant was not being operated, and that 'occupancy' would be achieved by having someone live on the premises.
 
 
 46
 An employee in Truman Stivers' office testified that she told MacMillan, on the telephone, that the plant was not operating, but that 'there was living quarters right behind the plant and he (appellant) was putting in a man so they could more or less keep his eye on it at all times.' MacMillan testified that he recalled no such statement, and that, since the policy was not ordered 'that way * * * in all probability there was none.' He further testified that he stated to the Pennsylvania company that, to his knowledge, 'it is occupied; there were no changes in occupancy.'
 
 
 47
 The trial court did not make a factual determination as to what, if any, notice MacMillan received concerning the non-operation of the plant and the plan to have a family live on the premises. It would appear, however, that whatever information Truman's employee supplied MacMillan in the course of their telephone conversation was given in such a casual manner that it left no impression on him.
 
 
 48
 Moreover, the purport of the information was that a person would occupy living quarters 'right behind the plaint.' This could well indicate to MacMillan that such person would occupy one of the buildings on the premises, such as the bunk house, no mention being made of a trailer. There is no evidence that MacMillan attempted to advise anyone as to the meaning of the 'occupancy' provisions of the policies, or that he assured anyone that the presence of a trailer family on the premises would be sufficient.
 
 
 49
 There may well be instances in which the notice received by a general agent as to the manner in which provisions of the policy are being construed by an insured will operate to estop the company from claiming a breach. In general, however, estoppel or waiver cannot be predicated upon a showing of notice to the agent and nothing more. See Northwestern Nat. Ins. Co. v. McFarlane, 9 Cir., 50 F.2d 539.
 
 
 50
 In our view, the notice which MacMillan, as general agent of Pennsylvania and Queen, received during the course of a telephone conversation with an employee of Truman Stivers was not such as to estop those companies from standing on the occupancy provisions of their policies.
 
 
 51
 The judgment as to Pennsylvania is affirmed. The judgment as to Queen, National, and Girard is reversed and the cause is remanded. Judgment shall be entered against Queen in the amount of $2,000, representing its policy coverage on 'Field Boxes and Supplies.' As previously noted, this item is not affected by the occupancy provision of the Queen contract. Judgment shall be entered against National and Girard in a sum conforming to the proofs of loss.
 
 
 
 [1]
 In Rizzuto v. National Reserve Ins. Co., 92 Cal.App.2d 143, 206 P.2d 431, 433, it was held that an insurer could not recover on a fire insurance policy reading 'while occupied only for barber shop purposes,' where about half the building was occupied by a clothes pressing and altering establishment. The addition of the word 'only' in the insuring clause, and the fact that there was occupancy for a different purpose, rather than nonoccupancy, prevent that case from being considered additional authority for the statement just made. This is likewise true of the decision of this court in National Reserve Ins. Co. of Ill. v. Ord, 9 Cir., 123 F.2d 73. The insuring clause covered a building 'while occupied only for Packing Plant purposes.' This difference in policy language, together with the fact that the buildings in the Ord ease had been completely abandoned, no occupancy being claimed, render that decision inapposite for present purposes
 The wording of the insuring clause in the instant case is also to be distinguished from that used in Silver v. London Assur. Corp., 61 Wash. 593, 112 P. 666, 667, relied upon by appellant. The words 'occupied as a saloon' (the word 'while' being omitted) were held to be descriptive only, so that it was not necessary for the insured to show that the building was occupied for that particular purpose at the time of the fire. An 1891 decision, Burlington Ins. Co. v. Brockway, 138 Ill. 644, 28 N.E. 799, cited in the Silver case, holds that an insuring clause provision reading 'while occupied by assured as a store and dwelling-house' is not a warranty that the building shall continue to be occupied as both a store and dwelling house during the existence of the policy, it being sufficient if it is occupied only as a store. We do not have a question of dual-purpose occupancy in the case before us.
 
 
 [2]
 Since, in the Queen policy, there is no requirement that the item 'Field Boxes and Supplies,' insured in the amount of $2,000, be contained in, on or attached to any building, and since the occupancy provision of the insuring and standard clauses pertain only to buildings, and not to premises, noncompliance with the occupancy provisions of that policy could not defeat recovery on this item. This difference between the stock coverage provision of the Queen policy and that of the National and Pennsylvania policies was not called to the attention of the trial court or of this court
 
 
 [3]
 The court said: 'It is neither the physical presence of inanimate objects alone, nor the physical presence of human occupants alone which characterizes an occupied dwelling. It is the habitual use of the inanimate objects by the human occupants that animates the dwelling and renders it occupied, that transforms four walls into a home. In such a home the human occupants move freely in and out so that their physical presence within four walls is rarely continuous.' 18 Cal.2d at page 235, 115 P.2d at page 2
 
 
 [4]
 Chase v. National Indemnity Co., 129 Cal.App.2d 853, 278 P.2d 68; Mayfield v. Fidelity & Casualty Co. of N.Y., 16 Cal.App.2d 611, 61 P.2d 83. See, also, Glickman v. New York Life Ins. Co., 16 Cal.2d 626, 107 P.2d 252, 131 A.L.R. 1292; Hotchkiss v. Phoenix Ins. Co. of Brooklyn, 76 Wis. 269, 44 N.W. 1106. Accordingly, we need not decide whether a general agent may waive conditions in an insurance policy by parol, where the policy requires waivers to be in writing. But, see Chase v. National Indemnity Co., supra, and Mayfield v. Fidelity & Casualty Co. of N.Y., supra