AMERICAN INSURANCE COMPANY OF NEWARK, NEW JERSEY, v. HAYS.

## Opinion delivered July 11, 1927.

1. INSURANCE—FORFEITURE OF POLICY—WAIVER.—Although a fire insurance policy gave the insurer the right to forfeit the policy for a change in the possession of the premises, it will be held to have waived such right where it required insured to pay an additional premium because of putting the tenant in possession and accepting insured's promise to pay such increased premium, although the loss occurred before the annual premium became due to which the increase was to be added.

2. INSURANCE—LOSS BY FIRE DURING TEMPORARY VACANCY.—Where insured put a tenant in possession and notified the insurance company and met the company's proposition that he should pay an increased premium because of such tenancy, and stated that he would pay it, if, when the premium became due, he was not occupying the property, and still owned it, the insurance company's subsequent letters indicating its satisfaction with such statement and sending in an indorsement requiring an increased premium because of tenancy, which he was requested to attach to the policy, constituted a contract for insurance and rendered the company liable for loss during temporary vacancy.

3. INSURANCE—LOSS BY FIRE DURING TEMPORARY VACANCY.—Where, although an insurance policy contained a clause for forfeiture by reason of vacancy, the company consented to tenancy in return for an extra premium, and, on tenant's moving out, the owner promptly applied for a vacancy permit, which was refused, the company was liable for a loss occurring four days after the tenant moved out and before the owner had received an answer to request for a vacancy permit.

4. INSURANCE—FIRE LOSS DURING TEMPORARY VACANCY.—If a fire insurance policy be taken on tenant property, a provision for forfeiture in case the premises become vacant will operate only after a reasonable time has elapsed in which to obtain other tenants.

Appeal from Ashley Circuit Court; *Turner Butler*, Judge; affirmed.

*Compere & Compere*, for appellant.

*Y. W. Etheridge*, for appellee.

WOOD, J. This is an action by W. H. Hays against the American Insurance Company of Newark, New Jersey, and the Fidelity & Deposit Company of Maryland

on a fire insurance policy issued by the insurance company on November 3, 1924, insuring the plaintiff's residence in the sum of $1,000 and his barn in the sum of $300. The insurance company will hereafter, for convenience, be called company. The residence of plaintiff at the time was occupied by the plaintiff, and the buildings—residence and barn—were situated on a farm three miles from Hamburg, Ashley County, Arkansas. The policy insured the property for a period of five years. The first premium of $21.60 was paid when the policy was issued, and the succeeding annual premiums were to be paid on the first of November of each year thereafter until November 1, 1928. On September 16, 1925, the plaintiff wrote the company that he was then living in St. Louis, and requested the company, when the premium was due, to send him notice at 1268 Delaware Avenue, St. Louis. On September 23, 1925, the company wrote the plaintiff that his note for $21.60 would be due on November 1, 1925. On October 24, 1925, the plaintiff sent his check for $21.60 to the company. On October 29, 1925, the company wrote the plaintiff, acknowledging receipt of the check for $21.60 for premium due November 1, 1925, and stated that, if he had rented his farm, he would have to pay an additional premium per annum therefor of $2.32, making the annual premium. $23.92. In this letter, as well as in the letter by the company to plaintiff of November 13, 1925, the company tells the plaintiff that, if he had a tenant occupying the property, he would have to pay the additional premium specified, and further states: "If a man pays his premiums, he certainly wants protection, and we do not want you to do anything to violate the terms of policy contract without our consent." On November 14, 1925, in answer to these letters, the plaintiff wrote, notifying the company that he had a tenant occupying the property, and stated: "I understand from your letter that I am to pay an increase of $2.32 on the next installment, due November 1, 1926, which I expect to pay if I am not occupying the property myself and still own the same."

On the 17th of November, 1925, the company wrote the plaintiff, inclosing permission to occupy the property by tenant, specifying the extra premium of $6.96 to be paid therefor, and requested the plaintiff to attach the same to his policy. On December 4, 1925, the plaintiff wrote the company as follows:

"I just received notice that my tenant whom I had on my place at Hamburg, Arkansas, moved out yesterday. Since I don't think I can get my business arranged to get another in there before about the 20th of January, 1926, I am asking you if you will issue me a vacancy permit till that time." On December 7, 1925, the company wrote the plaintiff as follows: "In reply to your favor of the 4th instant, will say that we cannot grant vacancy permit, so, if you will return your policy to us we will cancel the same, *pro rata*, and return your note and whatever amount cash that may be due you. Thanking you to let the policy come forward at once," etc.

On December 9, 1925, the plaintiff wrote the company as follows: "I just received word that my house burned, and all other buildings were destroyed by fire Monday night last, the night of December 7, 1925, so I think my policy covering house and barn is due." Plaintiff gave the number of his policy. He again wrote the company on December 21, 1925, to the same effect, stating that he had notified the company of the destruction of his property by fire and that he had not had any reply to his letter, that the policy was due, giving number of same. On December 22, 1925, the company wrote the plaintiff, saying: "The matter with reference to the above policy was referred to our special agent, Mr. Oscar Dillehay, Hall Building, Little Rock, Arkansas, who no doubt will give attention to the same at his earliest convenience." On January 7, 1926, the plaintiff wrote to Dillehay, stating he had written to the company notifying it of the fire and loss about a month previous, and had received an answer on December 22, 1925, stating that the company had referred the matter to him as special

agent, and requesting him to send the plaintiff blanks for proofs of loss, concluding the letter with the following: "I will send the proof and estimate to you, as I would like to have an early adjustment, so I can build."

On January 20, 1926, the company wrote the plaintiff, stating, in substance, that its agent had visited the premises and found that the property was vacant "and had been vacant for some time." This letter concluded as follows: "We refer you to the terms and conditions of your policy, without waiving any terms and conditions of policy and reserving all rights under terms of the policy and neither admitting nor denying liability." On January 22, 1926, the plaintiff wrote the company, inclosing the plans of the buildings and cost of same, and requested the company to give him a definite answer in the matter. On January 26, 1926, the company answered, saying: "I can only refer to the terms and conditions of your policy without waiving any of the terms and conditions of the policy." After this letter the plaintiff sent in his proof of loss about January 26, 1926, and on the 2d of February, 1926, wrote the company stating that he had written it four times previously, and that the company had ignored his letters, and notified the company that, unless he heard from it in a short time, he would put the matter in the hands of his attorney. This letter closed the correspondence.

The company is a member of the Fire Prevention Bureau, which is a rating bureau for fire insurance companies in Arkansas, one of the rules of which is that, when permission is given for premises to become vacant, by reason of the increased hazard by reason of such vacancy or unoccupancy, one-third of the insurance is suspended, and in case the property is destroyed by fire, through such vacancy, the company would be liable for not exceeding two-thirds of the amount of the insurance.

The policy and a certified copy of the bond for the prompt payment of all claims with the Fidelity & Deposit Company as surety thereon were made exhibits to the complaint.

The plaintiff instituted this action, and set up the policy, alleged a compliance on his part with its provisions, and prayed judgment for the amount of the policy in the sum of $1,228.24, less the premium notes. Plaintiff also prayed for penalty and a reasonable attorney's fee.

The defendant answered, and denied formally the allegations as to the destruction of the property, and denied specifically that the plaintiff had complied with the terms of the policy as to notice and proof of loss, and that defendant had waived any proof of loss, and alleged that the plaintiff had wholly failed to comply with the terms of the policy, and therefore denied any liability on the policy and on the bond of the Fidelity & Deposit Company.

The policy, among other things, contains this provision: "If the risk be increased in any manner, or if any change takes place in the title, possession or interest of the assured in the above mentioned property, * * * or if any of the above mentioned buildings BE OR BECOME VACANT OR UNOCCUPIED WITHOUT THE CONSENT of an officer or the Southern Farm Department manager of this company indorsed hereon, then, in each and every one of the above cases this entire policy shall be null and void."

The cause was, by consent of parties, submitted to the court sitting as a jury upon the above issues and facts, and the court rendered a judgment in favor of the plaintiff against the defendants in the sum of $1,228.24, the amount due under the policy, with interest, and twelve per cent. penalty, and an attorney's fee in the sum of $250, from which judgment is this appeal.

1. It will be observed that the policy provides that if any change takes place in the possession of the property without the consent of the insurance company, the policy should be null and void. The policy and the correspondence between the appellee and the insurance company show that the appellee, after issuance of the policy, changed possession of the property without the consent

of the insurance company. It appears from the policy that W. H. Hays insured his dwelling house, situated within three miles of Hamburg, Ashley County; his address in the policy is Hamburg, Arkansas, and his letter to the company of September 16, 1925, states he was then living in St. Louis. There is nothing in the record to show that, up to this time, he had obtained the consent of the company to change possession of the property, and if the company had then declared a forfeiture of the policy, it would have been entitled thereto, under the express terms thereof; but the company clearly waived this right to a forfeiture of the policy by its letters to appellee of October 29, 1925, November 13, 1925, and November 17, 1925, which show that the company consented to the occupancy of the property by tenant and accepted appellee's promise to pay the company an increase of $2.32 on the annual premium in consideration of the permission granted by it for appellee to have the premises occupied by tenant. We cannot therefore agree with learned counsel for the appellants in their contention that the appellee has not paid anything for the tenancy permit and made no promise to pay. On the contrary, appellee did promise to pay the increased premium, which was not due until November 1, 1926, and, before this premium became due, the fire destroyed the property, and the company has denied all liability under the policy. The parties agreed that, in case of recovery on the policy, the balance due on the unpaid premium note of $71.76 should be deducted from the amount due on the policy, and such was the judgment of the trial court.

2. It appears from the letter of the insurance company to the appellee of October 29, 1925, that the company proposed to continue the insurance on the property to the end of the term, with permission for tenant occupancy during that time, upon appellee's paying an increased premium of $23.92. At the next due date of the premium, which was November 1, 1926, the premium for the year 1925 had been paid, as the letter shows. Appellee accepted the company's proposition in a letter of Nov-

ember 14, 1925, in which he states that he understood that he was expected to pay the increased premium for tenant occupancy, and that he would pay the same if, at the time the premium became due, he was not occupying the property himself and still owned the same, and hoped that this would be satisfactory. The insurance company, by its letter of November 17, 1925, indicated that this was satisfactory to the company by sending to the appellee an indorsement which they requested him to attach to his policy, which indorsement contained this provision: "In consideration of extra premium of $6.96 permission is granted for property under this policy to be occupied by good reliable tenant during remaining term of policy contract." This concluded a contract between the insurance company and the appellee for the insurance of the property in controversy until November, 1929. This contract of insurance for tenant occupancy of the property insured was therefore in force and binding upon the parties on the 7th of December, 1925, when the loss occurred, unless, in the meantime, the appellee's rights thereunder had been forfeited by reason of the fact that, at the time the loss occurred, the property was vacant. The letter of the appellee to the insurance company of December 4, 1925, shows that the property became vacant on December 3, 1925, and the appellee notified the insurance company by letter of that fact on the next day, and requested a vacancy permit until January 20, 1926. The appellant replied to the letter on December 7, 1925, the day the fire occurred, and refused to grant appellee permission to continue the policy if the property remained vacant, and requested appellee to return the policy at once, saying, "We will cancel same, *pro rata,* and return your note and whatever amount of cash may be due you."

The policy provides: "If any of the above buildings be or become vacant or unoccupied without the consent of an officer or the Southern Farm Department manager of this company indorsed hereon, * * * then this entire policy shall be null and void." The *crux* of this lawsuit therefore is to determine whether or not, under the above

facts, there was in law a vacancy which, under the terms of the policy, wrought a forfeiture thereof.

In *Planters' Fire Insurance Company* v. *Steele,* 119 Ark. 597, 178 S. W. 910, Ann. Cas. 1917B, 667, the insurance company issued to Steele a policy of fire insurance on his dwelling which he was then occupying as such. Afterwards he moved-out, without permission of the company, and rented the same to a tenant. The tenant moved out, and Steele made application to the company for a vacancy permit. The company granted the permit for a period of thirty days. After the time for the vacancy permit had expired, Steele re-rented the house, and it was again occupied by a tenant, who occupied the same until four days before the fire. The tenant moved out on July 11 and the fire occurred on July 15, and the house was vacant when the fire occurred. The vacancy permit had expired before the tenant moved out of the house the last time, and Steele, the insured, did not ask for and did not obtain a renewal vacancy permit.

Under the facts of that case we held that the policy was void for two reasons; first, because there was a change of occupancy within the meaning of the policy, the owner having moved out and having rented the property insured to a tenant, who took possession thereof; and second, because the house covered by the insurance was vacant at the time of the fire. In that case, at page 602, we said:

"There are authorities to the effect that, where the insured property is occupied by a tenant, it is impliedly contemplated by the parties to the contract of insurance that any temporary vacancy caused by, or incident to, such change, is not within the purview of the vacancy clause. 2 Cooley's Briefs on Insurance, 1675. That principle does not apply, however, in this case, for the reason that the property was occupied as a dwelling, and it was contrary to the terms of the policy to change the character of the occupancy. *Insurance Association* v. *Dewberry,* 69 Ark. 295, 62 S. W. 1047, 86 Am. St. Rep. 195. Therefore there could be no presumption that a

temporary vacancy or period of unoccupancy was within the contemplation of the parties. * * * The stipulation of the present policy was unconditionally to the effect that, if the building become 'vacant and unoccupied,' the policy should be void, and it cannot be said that there was any period of time contemplated at all for unoccupancy for the reason that the policy also provides that any change of occupancy should also operate as an avoidance of the policy. No presumption could be indulged in the face of that express stipulation."

Learned counsel rely upon the above case, and cite a great many authorities from other jurisdictions to support their contention that, under the terms of the policy, the property in controversy, upon the undisputed facts of this record, was vacant at the time of the fire, and therefore that the policy at that time was void. One of the leading cases which support the contention of counsel for the appellants is that of *Farmers' Insurance Company* v. *Vogel,* 73 N. E. 612, 166 Ind. 239, 3 L. R. A. (N. S.) 966, 117 Am. St. Rep. 382, 9 Ann. Cas. 91. In that case the policy contained a provision similar to the one here under review. The building insured was occupied by a tenant with the knowledge of the insurer. The tenant, without the knowledge of the assured, moved out of the building, and, four hours thereafter, and before the assured had learned of it, and before he had reasonable time to make application for a vacancy permit, and before he had opportunity to procure another tenant, the building was destroyed by fire. The court held, under those facts, that the building was vacant within the meaning of the policy at the time of the fire, and that the policy was void. The case is exhaustively treated, and many authorities are cited to sustain the court's views, and the authorities holding otherwise are reviewed and distinguished to the satisfaction of the majority of the court. There was a dissenting opinion, however, in which the judge states that the appellee, the insured, "was entitled to a reasonable time in which to ascertain that the tenant had moved out and within which to procure the indorsement of a

vacancy permit upon his policy," and he cites a great many cases to support his conclusion. So we concede that there is a great contrariety of views upon the question. But we are in accord with Mr. Cooley when he says: "It is a well settled rule that, when the premises are described in the policy as occupied by a tenant, change of tenants is contemplated by the parties, and therefore any temporary vacancy caused by or incident to such change is not within the purview of the vacancy clause." 2 Cooley, Briefs on the Law of Insurance, page 1675. A great many cases are cited to support the text.

In R. C. L. it is said: "According to the prevailing view, if a fire insurance policy is taken on tenement property, a provision for forfeiture in case the premises become vacant will operate only after a reasonable time has elapsed in which to obtain other tenants." R. C. L., page 1104, § 282. See also 26 C. J., page 216, § 263. Numerous authorities are cited to support the text above announced.

In this connection we approve the doctrine announced by the Supreme Court of Wisconsin in *Hotchkiss* v. *Insurance Co.,* 76 Wis. 269, 44 N. W. 1106, 20 Am. St. Rep. 69, as follows:

"Under certain circumstances, premises may be vacant or unoccupied when, under other circumstances, premises in like situation may not be so, within the meaning of that term in insurance policies. Thus, if one insures his dwelling house as occupied as his residence, and moves out of it, leaving no person in occupation thereof, it thereby becomes vacant and unoccupied; but if he insures a tenement house or one occupied by tenant, it may fairly be presumed, nothing appearing to the contrary, that the parties to the contract contemplated that the tenant was liable to leave, and that more or less time might elapse before the owner could procure another tenant, and hence that the parties did not understand that the house should be considered vacant and the policy forfeited, immediately upon the tenant's leaving it." See also *Insurance Co.* v. *Davis,* 59 N. W. 700, 40 Neb. 700;

*Texas Fire Ins. Co.* v. *Kempner,* 34 S. W. 393, 396, 12 Tex. Civ. App. 533.

Now, it will be observed that the case of *Planters' Fire Insurance Co* v. *Steele, supra,* upon which counsel rely, does not sustain appellant's contention that, in the contemplation of the parties to this contract, there was a vacancy of the property at the time of the fire. On the contrary, we think the doctrine there announced, at least by implication, tends to support the views we here express. In that case the property was the dwelling of the insured, and it does not appear that there was any consent to a change of occupancy of the property insured. As the court said, "No temporary vacancy or period of unoccupancy was within the contemplation of the parties;" but here, as we have shown, there was an express contract that the policy should cover the property when occupied by a tenant. So it occurs to us that, under the facts of this record, it was in the contemplation of the parties that a vacancy might occur necessarily incident to a change of tenancy which would not affect the validity of the policy. When we consider the fact, which is undisputed, and which the insurance company had knowledge of, that the appellee at the time of the fire was residing in St. Louis and that the property insured at Hamburg, Arkansas, was occupied by a tenant, that the property became vacant on the 3d of December, 1925, and the appellee notified the insurance company of that fact the next day, certainly it cannot be said that the appellee was negligent in entering upon negotiations with the insurance company for a continuation of his policy until he could have the premises reoccupied. Before appellee received an answer to this request for a vacancy permit, on December 7, 1925, the fire occurred. It cannot be said that four days was an unreasonable time to conduct such negotiations, nor can it be said that four days was an unreasonable time incident to a change of tenancy. We think the argument unsound that the appellee did not intend to occupy the premises until January 20, 1926, because he requested the insurance company to give him

a vacancy permit until that time. On the contrary, we doubt not that, if the insurance company had notified the appellee, in answer to his request, that it would grant him a limited vacancy permit, and, after such time, if the property were still vacant, the policy would be declared forfeited, appellee would have immediately arranged to reoccupy the premises either by himself or by a tenant.

Our conclusion on the whole case therefore is that, at the time the fire occurred, there had been no forfeiture of the policy, that the same was in full force and effect, and that the appellants are liable thereunder for the amount of the judgment rendered against them in favor of the appellee.

The judgment is in all respects correct, and it is therefore affirmed.