FARMERS FIRE INSURANCE COMPANY *v.* FARRIS.

5-549                                   276 S. W. 2d 44

Opinion delivered March 7, 1955.

*R. S. Dunn*, for appellant.

*U. C. May* and *Donald Poe*, for appellee.

Ed. F. McFaddin, Justice. Appellee recovered a Jury verdict and Court judgment against appellant for $3,000.00 for loss by fire of a house and barn. On this appeal we consider two questions presented by appellant.

I. *Appellant's Request for an Instructed Verdict.* Appellant issued to appellee, as owner, an insurance policy, for an annual premium of $39.00. The premises and amount of insurance as stated in the policy were:

"On dwelling house No. 1................$2,000.00;

On barn No. 1............................... 1,000.00."

The policy contained this pertinent clause:

". . . this company shall not be liable for loss or damage occurring . . . (f) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of 10 days; . . ."

Appellant claims that it was entitled to an instructed verdict on the theory that under all of the evidence the insured buildings had been "vacant or unoccupied" more than ten days at the time of the fire. What is meant by the words, "vacant or unoccupied," is a question of law. Whether the buildings had that status at a given time is a question of fact.

In *American Insurance Co. v. Hays*, 174 Ark. 772, 296 S. W. 724, we discussed the terms "vacant and unoccupied," and said:

"In this connection we approve the doctrine announced by the Supreme Court of Wisconsin in *Hotchkiss* v. *Insurance Company*, 76 Wis. 269, 44 N. W. 1106, 20 Am. St. Rep. 69, as follows: 'Under certain circumstances, premises may be vacant or unoccupied when, under other circumstances, premises in like situation may not be so, within the meaning of that term in insurance policies.' "

In *Burlington Ins. Co.* v. *Lowery*, 61 Ark. 108, 32 S. W. 383, we said:

"As to the house being unoccupied at the time of the fire, the evidence tends to show that at the time of the fire the house was occupied by a Mr. Cole, tenant of the appellee, who had made arrangements to move into another house, and who, a day or two before the fire, had gone to Malvern to meet his wife, leaving his two daughters in the house, with instructions to remain until he returned; that his wife was sick at Malvern and on that account he did not return until Monday, when he had expected to return on the Saturday before. That he arranged to have a man come on Sunday with a wagon to move him; that the man came, and moved a small portion of his furniture; but that nearly all his furniture was consumed by the fire Sunday night when the house burned. \* \* \*

"The temporary absence of the tenant at the time of the fire did not work a forfeiture, the policy having provided that if the house was allowed to become unoccupied, the policy should be forfeited."

In 29 Am. Jur. 540, the text[1] states:

"Generally, the term 'occupied' implies a substantial and practical use of the insured building for the purposes for which it is intended and as contemplated by the policy; and the terms 'unoccupied', 'vacant and unoccupied', and 'vacant or unoccupied' imply a situation in which the insured building or premises are without

---

[1] In 29 Am. Jur. 541 *et seq.*, there is a discussion of the various situations regarding "vacancy and unoccupancy."

an occupant of the kind, and during the time, contemplated by the intention of the parties, as indicated by the terms and descriptions of the policy.''

In L. R. A. 1915B, p. 849, there is an Annotation on ''Vacancy as question of law or fact''; and the holdings are summarized:

''What is meant by the terms 'vacant or unoccupied' is a question of law for the court. *Schuermann* v. *Dwelling House Ins. Co.,* 161 Ill. 437, 52 Am. St. Rep. 377, 43 N. E. 1093; *Gash* v. *Home Ins. Co.,* 153 Ill. App. 31; *Phoenix Ins. Co.* v. *Tucker,* 92 Ill. 64, 34 Am. Rep. 106; *German-American Ins. Co.* v. *Buckstaff,* 38 Neb. 135, 56 N. W. 692.

''And where the undisputed facts as naturally interpreted show vacancy and unoccupancy, and consequent increase of risk, it becomes the duty of the court to declare a verdict for the insurer. *Moore* v. *Phoenix F. Ins. Co.,* 64 N. H. 140, 10 Am. St. Rep. 384, 6 Atl. 27.

''But ordinarily the question, whether a building is vacant or unoccupied at the time a loss occurs, is one of fact for the jury. *Schuermann* v. *Dwelling House Ins. Co.; Gash* v. *Home Ins. Co.; Phoenix Ins. Co.* v. *Tucker;* and *German-American Ins. Co.* v. *Buckstaff, supra; State* v. *Tuttgerding,* 8 Ohio Dec. Reprint, 74.

''And the question whether a house was unoccupied was held to be for the jury in *Vanderhoef* v. *Agricultural Ins. Co.,* 46 Hun. 328, where the evidence, among other things, showed that a tenant of a part of the premises had left about a week before the fire, but the insured did not learn of the fact until the day before the fire occurred.

''And in *Wait* v. *Agricultural Ins. Co.,* 13 Hun. 371, in which a policy provided that it should become void if the house should cease to be occupied in the usual and ordinary manner in which dwelling houses are occupied as such, the question whether there had been a breach of the provision was held for the jury, where the tenant commenced to move out and removed most of his furni-

ture and all his family from the house, and a fire occurred the next night.

"And in *Woodruff* v. *Imperial F. Ins. Co.*, 83 N. Y. 133, the question, whether the premises were vacant or unoccupied, was held to be for the jury where they were rented and occupied until two days before the fire, and the former tenant testified that he left part of his goods in the house with the insured's permission, and that his tenancy ceased when his goods were burned, and another witness testified that he was in the house the day before the fire and saw goods in some of the rooms and that other rooms were locked."

With the cases and authorities being as quoted, we turn now to the facts in the case at bar. At the time the policy was issued Maxwell was a tenant in possession of the premises, but it is not disputed that appellant knew of the change in tenants in November, 1952, when Oliver and family moved into the property in the place of Maxwell. Oliver was operating a sawmill on the premises and was also keeping a herd of cattle. In September, 1953, conditions changed so that it was no longer profitable for Oliver to operate the sawmill, and he decided to build a house in Booneville. Pending completion of this house, he and his wife had moved a major portion of their furniture into a small concrete garage in Booneville, where they were sleeping and eating. This move occurred some time between the 25th and 29th of September. But they had prepaid the rent on the premises, and they decided to retain possession of the insured house and barn until the end of the rent term, and so notified appellee's wife on September 25, 1953. Consistent with their decision, they left 10 or more head of cattle in the pasture, some salt and hay in the barn, and a table, wood heater, icebox, chair, and certain tools in the house. They were regularly on the premises at least once a day and at times, two or three times a day. They had, of course, left the sawmill on the premises, and Mr. Oliver continuously insisted that it was his intention to move all of his belongings back to the farm

when conditions became such that he could profitably operate the sawmill.

Appellee was in the hospital at the time Oliver moved a portion of his household goods to the garage in Booneville; but since the rent was paid up until November 15, 1953, and since Oliver stated a desire to retain possession of the premises, there was nothing appellee could do until the next rent date, which was November 15, 1953. However, on October 22, 1953, fire destroyed both the house and barn.

Now under these facts as detailed, and others in the record, we hold that a question of fact was made for the Jury as to whether the Insurance Company had sustained its burden of proving that the buildings had been "vacant or unoccupied" for more than ten days before the fire on October 22, 1953. The Trial Court was correct in refusing appellant's request for an instructed verdict.

II. *Instructions.* Among other instructions, the Court gave appellee's Instruction No. 4, over appellant's general and special exceptions. This instruction reads:

"If you find from a preponderance of the evidence under the instructions of this Court that the house and barn did compromise the premises and were insured as a unit; that they were within the same enclosure; and that one of them was occupied, as defined by other instructions, from and after the date of the insurance to the time of their destruction by fire, then you are instructed that so long as one of them was occupied the policy could not be forfeited on the house and barn, for vacancy or unoccupancy."

Under this instruction the Jury could have found that even though the house was vacant or unoccupied, nevertheless the barn was not; and on so finding the status of the barn, the Jury could have returned a verdict for the insurance on the house even though it was vacant and unoccupied. Such is not the law. The status of the barn as regards vacancy or unoccupancy

cannot be used to affect such status of the house. In other words, "the tail cannot wag the dog." In Appleman on "Insurance Law & Practice", Vol. 4, p. 788, the rule as respects a house and barn being insured in the same policy, is stated as follows:

". . . if the insurance is upon a farm dwelling and subordinate buildings, the occupancy of the dwelling determines the character of the occupancy of a barn and other outbuildings used in connection with it. The buildings could not, therefore, be considered unoccupied if the insured resides in the dwelling, it not being necessary that each of such outbuildings be used constantly; but if the dwelling has definitely been vacated, recovery may not be had for destruction of the other buildings."
The rule stated by Appleman is correct. Here the insurance is on a farm dwelling and a barn, and the status of the barn as regards vacancy or unoccupancy cannot affect the status of the dwelling. Such is the vice in appellee's Instruction No. 4.

Appellee relies most strongly on the case of *McQueeny* v. *Phoenix Ins. Co.,* 52 Ark. 257, 12 S. W. 498, 5 L. R. A. 744, and quotes the syllabus of that case in the Arkansas Reports as follows:

"Two houses situated thirty feet apart but in the same inclosure, were insured for a separate sum in consideration of the payment of a gross premium. The policy contained the following clause: 'If, during this insurance, the above mentioned premises shall become vacant or unoccupied, . . . this policy shall cease and be of no force.' . . . Held: That the two houses comprised the 'premises' insured, within the meaning of the policy, and so long as either of them was occupied the policy was not suspended."

Appellee's Instruction No. 4 was apparently framed from the McQueeny case; but that case is not like the one here, because: (a) two dwellings were involved there, rather than one dwelling and a barn, as here; and (b) the policy there had a provision different from the one here. In the McQueeny case, the policy read:

"If during this insurance the above *mentioned premises* shall become vacant. . ."; while in the case at bar, the policy reads: "If a *described building* is vacant. . ." In the McQueeny case, two dwellings were insured on the same premises; and so long as one of the dwellings was occupied, the *premises* were not vacant. But in the case at bar, the policy does not refer to the *premises* being vacant, but refers to *a building* being vacant. Under the rule stated in Appleman, as aforesaid, the status of the barn as regards vacancy or unoccupancy cannot be carried over and imputed to the dwelling; and yet Instruction No. 4 so told the Jury.

Appellant complains of the action of the Court in giving and refusing of other instructions, and also complains about the admission of evidence. But we find it unnecessary to consider any of the points except the plaintiff's Instruction No. 4, as given by the Court. This instruction was clearly erroneous, and necessitates a reversal of the judgment. The matters of the other instructions and the admission of evidence may not occur on a new trial.

For the error in giving appellee's Instruction No. 4, the judgment is reversed and the cause is remanded for a new trial.

