296 F.2d 71
 RELIANCE INSURANCE COMPANY, Appellant,
v.
Dean JONES, Waynoka Cooperative Elevator Association and Farmers Elevator Mutual Insurance Company, Appellees.
Dean JONES, Cross-Appellant,
v.
FARMERS ELEVATOR MUTUAL INSURANCE COMPANY and Waynoka Cooperative Elevator Association, Cross-Appellees.
 No. 6741.
 No. 6742.
 United States Court of Appeals Tenth Circuit.
 November 7, 1961.
 
 Walter D. Hanson, Oklahoma City, Okl. (William L. Peterson, Jr., Oklahoma City, Okl., was with him on the brief), for appellant.
 Coleman Hayes, Oklahoma City, Okl. (Denver W. Meacham, Clinton, Okl., was with him on the brief), for Dean Jones.
 Alex Cheek, Oklahoma City, Okl. (John D. Cheek, Oklahoma City, Okl., was with him on the brief), for Farmers Elevator Mut. Ins. Co.
 Before PHILLIPS, PICKETT and HILL, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 This action is brought under the provisions of 28 U.S.C.A. §§ 2201 and 2202, commonly known as the Declaratory Judgment Act, by the plaintiff-appellant, Reliance Insurance Company,[1] whereby it seeks an order declaring liability to its insured Dean Jones[2] for only a portion of a loss admittedly covered by its policy. It further asks that the remainder of the loss suffered by Jones be declared to be covered by a policy issued by another insurance company, Farmers Elevator Mutual Insurance Company,[3] to its insured, Waynoka Cooperative Elevator Association.[4]
 
 
 2
 Jones entered into a contract with Co-Op to construct a steel grain storage building with a flat storage capacity of approximately 200,000 bushels and the necessary elevator mechanism, commonly referred to as a leg, on the exterior of the building. The work was to be completed in time for the harvest on or before June 5, 1959. About two weeks ahead of the anticipated completion of the building the Co-Op sought to protect itself against any loss which it might sustain by reason of fire, lightning or windstorm when and if it accepted the contract as having been completed and took over the ownership and occupancy of the building. It therefore made application to its insurance company, Mutual, to extend the coverage to insure the Co-Op against these losses. Mutual agreed to issue such insurance and did issue its binder, agreeing to issue a policy at a later date. Both the Co-Op and Mutual knew that Jones had a performance bond, knew that the building was covered by Jones' builders risk policy until its completion, and it was therefore the intention of both the insured, Co-Op, and the insurer, Mutual, that such insurance cover only losses suffered by the Co-Op. The effective date of the policy was to be the date Co-Op accepted the contract and took possession of the building.
 
 
 3
 Prior to June 11, 1959, Jones had in effect a builders risk insurance binder upon the new construction, and, on that date that binder was cancelled or an attempt was made to cancel it. On the evening of that same date Jones procured from Reliance a binder for a builders' risk policy in the amount of $60,000 to cover him on the construction job. On the following day, June 12, 1959, a windstorm toppled the unfinished leg which, in turn, fell upon the roof of the building proper causing great damage to it.
 
 
 4
 Jones proceeded to reconstruct and complete the damaged building in accordance with the original plans and specifications and was paid the full contract price by Co-Op for the job. He thereafter made claim against Reliance upon the binder dated June 11, 1959, for his loss in having to reconstruct the building as a result of the storm damage.
 
 
 5
 Reliance answered that it was liable for only a part of the loss. That part being only the damage related to the "leg", not to the building proper. This refusal was based upon a standard provision in the policy to be issued in conformity with the binder.[5]
 
 
 6
 Reliance relies upon this clause in its refusal to pay for the loss because at the time of the damage the Co-Op had stored in the building a small amount of grain. This, Reliance maintains was "occupancy" of the building.
 
 
 7
 It is undisputed that the construction of the building had not progressed as rapidly as both the Co-Op and Jones had anticipated, and that on or about June 11, 1959, the Co-Op's other storage facilities were filled to capacity. No railroad cars were available to transfer the excess wheat to elevators in Enid as had been previously done. In order to get the excess wheat on hand under cover, which amounted to some 7,000 to 10,000 bushels, part of the north end of the building then under construction was cleaned and the wheat was dumped from trucks onto the floor. When this type of delivery was no longer possible, Jones, at the request of Co-Op, rigged a makeshift auger which was used to transfer the wheat from the trucks on the outside of the building to the floor of the building. At this time, it was impossible to use the machinery which was installed in the building since the work was not complete nor had the new machinery been tested.
 
 
 8
 The trial court found that the placing of the small amount of grain in the storage building as a temporary expedient did not constitute "occupancy" so as to avoid liability under the Reliance policy. Assuming, without so determining, that Reliance is correct in considering the building and the leg to be separate structures, the validity of the trial court's finding on the question of "occupancy" is the only issue on this appeal.
 
 
 9
 The findings of fact made by the trial judge are not contrary to the evidence. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that the findings of fact of the court sitting without a jury shall not be set aside unless clearly erroneous. Certainly, from a study of the record as a whole, one could by no means come to the conclusion that any of the findings of fact were clearly erroneous, and our conclusion is that the findings of the District Judge were not in error but were amply supported by the evidence.
 
 
 10
 Appellant proceeds on an unduly restricted interpretation of the occupancy clause when related to the facts at hand, by its narrow construction of the word "occupied". An insurance policy like any other contract follows certain rules of construction. The word "occupied" must be considered not in a technical but in a popular sense, and must have a reasonable and practical construction. Words or terms in an insurance policy are to be construed according to their plain, ordinary, and accepted sense in the common speech of men unless it affirmatively appears from the policy that a different meaning was intended. New York Life Insurance Company v. Atkinson, 10 Cir., 241 F.2d 674, 676; Mandles v. Guardian Life Insurance Co. of America, 10 Cir., 115 F.2d 994; Aetna Insurance Co. of Hartford, Connecticut, v. Jeremiah, 10 Cir., 187 F.2d 95. Construed with reference to the species of property insured and the use contemplated for this particular type of property it cannot be said that the building was occupied. The evidence is indicatory of the fact that the building was never put to anything more than a mere transcient or trivial use. Cuthrell v. Milwaukee Mechanics Ins. Co., 234 N.C. 137, 66 S.E.2d 649; Society of Cincinnati v. Exeter, 92 N.H. 348, 31 A.2d 52. A building is occupied when it is put to a practical and substantial use for the purpose for which it was designed. 67 C.J.S. Occupy page 84. Since the evidence clearly shows that the building was never occupied within the terms of the insurance policy the judgment of the court below is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Hereinafter referred to as Reliance
 
 
 [2]
 Hereinafter referred to as Jones
 
 
 [3]
 Hereinafter referred to as Mutual
 
 
 [4]
 Hereinafter referred to as Co-Op
 
 
 [5]
 "Occupation Clause:
 "It is a condition of this insurance that the premises shall not be occupied without obtaining the consent of this Company endorsed thereon; except that machinery may be set up and operated solely for the purpose of testing the same without prejudice to this policy."