FIREMAN'S FUND INSURANCE COM-
PANY, Plaintiff-Appellee,

v.

MILLERS' MUTUAL INSURANCE AS-
SOCIATION, Defendant-Appellant.

No. 71-1125.

United States Court of Appeals,
Tenth Circuit.

Dec. 7, 1971.

Paul H. Niewald, Kansas City, Mo., for defendant-appellant.

Phillips Breckenridge, Tulsa, Okl. (Thomas R. Brett, Tulsa, Okl., on the brief), for plaintiff-appellee.

Before JONES,* HILL and BAR-RETT, Circuit Judges.

HILL, Circuit Judge.

Appellee, Fireman's Fund Insurance Company, originally filed this action in the Eastern District of Oklahoma against ' Millers' Mutual Insurance Association [1] seeking a declaratory judgment concerning the liability of the par-ties under two fire insurance policies. Fireman's Fund prevailed in the trial court, and Millers' Mutual has appealed.

The undisputed facts are that Keota Mill and Elevator Company (Keota) had contracted with a construction contractor, Tandy Industries, Incorporated (Tandy), for the construction of a fertilizer blending plant. Construction progressed normally with Tandy removing its workers from the construction site on April 20, 1968, concluding construction of the plant to be completed. Tandy had obtained a builder's risk insurance policy from Fireman's Fund for coverage of losses during construction. Keota obtained its insurance coverage from Millers' Mutual on April 20, 1968, with coverage for one year thereafter.

On April 26, 1968, two Tandy representatives came to the Keota jobsite to determine if the building was completed.

---

* Of the Fifth Circuit, sitting by designation.

1. Hereinafter the parties will be referred to as "Fireman's Fund" and "Millers' Mutual".

It was found that certain conveyor belts were loose, a hood had not been installed, and the scales used in weighing the various ingredients to be blended were out of adjustment by ten percent. The belts were adjusted and a hood installed the next day, thus remedying these deficiencies. On April 29, 1968, the building was destroyed by fire. Millers' Mutual and Fireman's Fund each paid $15,000 under their respective policies to allow Keota immediately to rebuild the plant, and reserved the question of ultimate liability to be determined later. After trial on the question of liability, the trial court concluded Millers' Mutual was obligated for the full loss, and accordingly entered judgment in favor of Fireman's Fund for the amount it had previously paid under its policy. The trial court found expressly that on April 27, 1968, after the above mentioned conveyor belts had been adjusted, the manager of Keota advised Tandy that he would accept the building and equipment as being completed, and that Tandy had performed its contract; that ten days before that date Keota had moved fertilizer into the building and had made sales of the sacked fertilizer; on that same date, Keota unloaded bulk fertilizer from railroad cars into the bins inside the new building; and that Keota had actually been occupying and in physical control of the newly constructed building since April 20, 1968.

On appeal, appellant contends the court erred in finding the Fireman's Fund policy had terminated at the time of the fire loss. It contends the terms of the policy itself continued the policy coverage until the building was fully completed and accepted by the purchaser, and that the ten percent variation in the scales which had not been remedied at the time of the loss rendered the entire project uncompleted.

Appellee urges the correctness of the trial court's determination that minor perfections to the construction were not essential to completion under the policy. The court concluded there had been substantial performance, thereby removing liability for loss from Fireman's Fund through its insured, Tandy.

The resolution of this matter revolves about the narrow question of whether Tandy had an insurable interest in the Keota blending plant at the time of its destruction. The fact that the builder's risk policy continued in full force and effect, that is, that it had not been cancelled, is not determinative in this case. The question is whether there was coverage under the policy. By the terms of the policy itself, "Coverage attaches . . . until the insured building or structure shall have been fully completed, accepted by the purchaser and the interest of the Insured shall have ceased." Coverage under the policy would be extended until the three elements of completion, acceptance and cessation of interest exist concurrently.

In Hendrix v. New Amsterdam Casualty Company, 390 F.2d 299, 304 (10th Cir. 1968), we concluded that "work of merely repairing defects or remedying inferior workmanship did not preclude a determination that the building had been completed for the purposes of the policy." In this case, three unacceptable items were found during the inspection on April 26, 1968. Of these three items, two had been corrected at the time of the fire, leaving only the adjustment of the scale remaining to be remedied. The one item remaining to be corrected is of such a *de minimus* nature as to deny the palpable fact of completion.

Acceptance is the second of the three elements which must be found to exist for coverage to have terminated. We find no express acceptance in writing to have been executed as was ultimately done when reconstruction was completed. However, the trial court found there had been oral acceptance. In addition, we are not unmindful of the fact of Keota's prior occupancy and its acquisition of insurance coverage from Millers' Mutual nine days prior to the fire on the day Tandy's employees left the construction site. We have determined a building to be occupied "when it is put to a practical and substantial use for the purpose

for which it was designed." Reliance Insurance Company v. Jones, 296 F.2d 71, 74 (10th Cir. 1961). Keota had begun storage of materials in the plant and had made some sales of sack fertilizer from the building. Millers' Mutual likewise argues the fact of acquisition of insurance coverage should not be determinative. We feel it is in this case. In Reliance, *supra,* the Co-op had applied for insurance some two weeks in anticipation of completion of the building. A binder was issued by the insurance company for the policy to be issued at a later date, after the building had been completed and Co-op took possession. Here, the policy issued by Millers' Mutual extended coverage from April 20, 1968, for one year thereafter. The trial court concluded there had been acceptance. We perceive no basis on which this decision can be assailed as clearly erroneous, therefore must be affirmed. Northern Natural Gas Company v. Grounds, 441 F.2d 704 (10th Cir. 1971).

Tandy's interest in the building had likewise ceased at the time of the destruction. The continued existence of a balance owing under the contract is not sufficient interest to extend coverage under the builder's risk policy. This Court in Hendrix, *supra,* stated at 302 of 390 F.2d, "that where a builder's risk policy is issued to insure a building only during the course of construction, the insured risk terminates upon the completion of the construction. . . ." Upon completion of the construction, the contractor has a claim for payment in full, even in the event the building is destroyed before he receives payment. The destruction of the building does not likewise destroy the contractor's right to payment for the building which had been completed.

We cannot conclude that any evidence supports a determination that Tandy had an insurable interest remaining in the fertilizer plant which would obligate its insuror, the appellee here, to extend coverage for the loss. We must conclude that the findings of fact by the trial court are amply supported by the evidence, and its conclusions of law are correct statements of the law applicable, as applied to the facts of this case.

Affirmed.