**Pat McCARTY, Plaintiff,**

v.

**MARYLAND CASUALTY COMPANY, Defendant.**

Civ. No. F-75-11-C.

United States District Court, W. D. Arkansas, Fayetteville Division.

Oct. 5, 1976.

H. Franklin Waters, Crouch, Blair, Cypert & Waters, Springdale, Ark., for plaintiff.

Thomas Pearson, Sr., Pearson & Pearson, Fayetteville, Ark., for defendant.

## MEMORANDUM OPINION

PAUL X WILLIAMS, Chief Judge.

This is an action brought by the owner of a building against the insurer who had issued a "builder's risk" policy insuring the plaintiff's building during construction with provision that "in no event shall the insurance cover after the insured building has been occupied either in whole or in part." There is complete diversity of citizenship and the amount in controversy exceeds $10,-000.00. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

On August 27, 1976, the case was tried to the Court sitting without a jury.

From the testimony of witnesses and the various exhibits introduced in evidence the Court finds that in February, 1974, Mr. Pat McCarty, plaintiff, purchased some land near Lowell, Arkansas, in the Fayetteville Division of the Western District of Arkansas, for the purpose of constructing an all metal building to house an organic fertilizer manufacturing plant. Mr. McCarty had previously resided in the Dallas, Texas area,

and had obtained financing for his venture from the Citizen's Bank of Richardson, Texas.

Mr. McCarty entered into a contract with Structural Systems, Inc., in February, 1974, and pursuant to that contract Structural Systems began actual construction on April 1, 1974.

The major piece of machinery required in plaintiff's organic fertilizing business was a "digester," a huge cylindrical tank, into which chicken litter was fed and developed into organic fertilizer. The digester was so large that McCarty and Structural Systems recognized that the building would have to be constructed around it after it had been installed.

As the digester had cost the plaintiff $55,000, which he had borrowed from the Citizen's Bank of Richardson, McCarty requested the builders to obtain a certificate of insurance reflecting that both the building and the digester were insured under the builder's risk policy and that the certificate be forwarded to the Bank at Richardson, Texas.

Structural Systems contacted its insurance agency, Brown, Hiller and Clark, informing them of the need to insure the digester and requesting the certificate. Structural Systems had received its initial builder's risk policy in 1972, insuring multiple construction projects. The policy named Structural Systems as the named insured. Each year an audit was conducted to determine which buildings had been insured and which buildings were currently or in the future would be insured under the policy.

When Structural was asked to obtain the certificate reflecting that the digester was also insured under its regular floating policy, it contacted Mr. Sam Hiller of the Brown, Hiller and Clark Insurance Agency in Fort Smith. The certificate was issued on May 1, 1974. It named Structural Systems, Inc., and Pat McCarty and "subcontractors A.I.M.A." as the named insureds. It recited that the policy limits were $144,000 "on all steel building and attached machinery located near Lowell, Arkansas."

The certificate also recited that the policy period was to be from April 8, 1974, until completion or May 1, 1975.

The insurance agency collected an additional premium from Structural for insuring the attached machinery, and Structural Systems passed the cost on to McCarty.

In November, 1974, the building was nearing completion and McCarty took out a standard fire policy on the building and contents from Miller's Mutual Insurance Association. He also leased space in the unfinished building to a third party for the storage of calcium propanate, for which he received $5.00 per ton.

On November 20, 1974, the building and contents were damaged by fire. Miller's Mutual Insurance paid $104,246.86 to McCarty under a "loan receipt" agreement whereby McCarty would be liable to repay Miller's Mutual any amount recovered from a third party.

The building was rebuilt by a different building contractor and the damaged equipment was either replaced or repaired. Suit was instigated in this Court on March 4, 1975, in which the plaintiff sought to recover $37,153.58, the amount of the loss which he contends represents Maryland Casualty's pro rata liability under the policy.

Before trial, the defendant, Maryland Casualty moved the Court to dismiss the action because it was not brought in the name of the real party in interest. This Court denied the motion, holding that the loan receipt agreement between Miller's Mutual Insurance Association and Mr. McCarty gave McCarty a substantive right to be enforced. Fed.R.Civ.P., Rule 17(a); *Luckenback v. W. J. McCahan Sugar Refining Co.*, 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170 (1918); *Braniff Airways, Inc., v. Falkingham*, 20 F.R.D. 141 (D.C.Minn.1957); 13 A.L.R.3d 140, 150; *Miller v. Pine Bluff Hotel Co.*, 170 F.Supp. 552 (E.D.Ark.1959). There were no facts brought out during the trial to prove that the plaintiff was not the real party in interest.

The other preliminary issue raised in this case concerns plaintiff's failure to file a

written proof of loss with the defendant, Maryland Casualty. Several days after the fire, plaintiff contacted the claims representative of Maryland Casualty informing him of the loss and also contacted the adjuster for Miller's Mutual, who assured McCarty that he would be in contact with Maryland Casualty. Plaintiff's attorney also corresponded with defendant's claims representative demanding that Maryland recognize its liability. Maryland unequivocally contended that it had no liability under the policy.

 The Court finds that by denying liability Maryland waived its requirement of formal proof of loss. *Federal Life & Casualty v. Weyer*, 239 Ark. 663, 391 S.W.2d 22 (1965).

The crux of this case involves paragraph 5 of the policy which provides in part as follows:

WHERE AND WHEN INSURED.

Coverage attaches from the time the insured property becomes at the risk of the insured and covers continuously thereafter on premises or site of construction; . . . until the insured buildings or structures shall have been fully completed, accepted by the Purchaser and the interest of the Insured shall have ceased. In no event shall this insurance attach or cover after the insured building or structure has been occupied either in whole or in part.

There was no serious contention that the building was entirely completed; the question is whether the building was "occupied either in whole or in part" at the time of the loss.

The evidence is uncontradicted that at the time of the fire, McCarty had permitted some 89,000 pounds of calcium propanate to be stored in the building by a third party. The storage of this chemical occupied approximately 43% of the entire floor space of the building and McCarty received $5.00 per ton per six weeks for the use of the building.

 The plaintiff contends that the above-quoted clause is ambiguous and

should be construed in the manner most favorable to the plaintiff. We do not find the clause to be ambiguous. The reasonable meaning of the two sentences is that the building will be insured until completion, although coverage will end when the building becomes "occupied either in whole or in part" if occupancy occurs prior to completion. The policy language expresses this idea clearly and is unambiguous.

The word "occupied" has been held by the Arkansas Supreme Court to be unambiguous and is to be given the "plain import of its language." *Duckworth v. Peoples Indemnity Ins. Co.*, 235 Ark. 67, 70, 357 S.W.2d 26 (1962). The Court defined the phrase "vacant or unoccupied" to apply when the insured building is without an occupant of the kind contemplated by the parties, as indicated by the terms and description of the policy. *Ibid.*

We recognize that the words "occupied" or "occupancy" as used in builder's risk policies often have been interpreted in such a way as to allow recovery by the insured. See, e. g., *Reliance Insurance Co. v. Jones*, 296 F.2d 71, 94 A.L.R.2d 217 (10th Cir. 1961); *Scottish Union and National Insurance Co. v. Encampment Smelting Co.*, 166 F. 231 (8th Cir. 1908), and *Cuthrell v. Milwaukee Mechanics Insurance Co.*, 234 N.C. 137, 66 S.E.2d 649 (1951). Neither counsel nor the Court has been able to find an interpretation of the occupancy clause in a builder's risk policy by the Arkansas Supreme Court, although that Court has interpreted the word "occupied" or "occupancy" in other contexts. In *Farmer's Fire Insurance Co. v. Farris*, 224 Ark. 736, 276 S.W.2d 44 (1955), the Court dealt with a vacancy clause in a homeowner's policy. It defined the term, in part, as follows:

Generally, the term 'occupied' implies a substantial and practical use of the insured building for the purposes for which it is intended, and as contemplated by the policy . . . . .

As was set forth above, there is no question but that the building was not in this case being used for any purpose for which it was designed and intended.

**116**

In *American Insurance Co. v. Hays,* 174 Ark. 772, 296 S.W. 724 (1927), the Court held that a temporary vacancy of rental property was within the contemplation of the insurer and insured-landlord, and therefore the vacancy clause in a standard fire policy was held inapplicable.

 This Court finds that if the Arkansas Supreme Court were faced with the occupancy clause in this builder's risk policy insuring a building intended for manufacturing purposes it would enunciate that the building became occupied when it was used for a purpose within the contemplation of the parties, provided the use was not to test the building for defects and provided the use was not transient or trivial. *See Reliance Insurance Co. v. Jones,* 296 F.2d 71 (10th Cir. 1961); *Scottish Union and National Insurance Co. v. Encampment,* 166 F. 231 (8th Cir. 1908); *Hightower v. New York Fire Insurance Co.,* 112 F.Supp. 10 (D.C.S.C. 1953).

Applying these principles to the case at bar we find that the building was "occupied" and that the defendant Maryland Casualty Co. was no longer an insurer of the building. We find that the insured and insurer (acting through its agent) contemplated that during construction the building could be used to store property belonging to the plaintiff that would be used in the construction of his building or in the installation of machinery and still be covered by the builder's risk policy. However, we find that the plain meaning of the word "occupied" makes it reasonable to say that the parties contemplated that the builder's risk insurance would cease if and when the plaintiff made a substantial use of the building which was not trivial, not to test the structure and not related to the construction of the building, installation of machinery, or preparation to begin business.

The plaintiff rented out 43% of the building for six weeks. The arrangement was solely for plaintiff's pecuniary benefit. We find that he thus "occupied" the building.

 The plaintiff contends that even if his use of the building constituted occupan-

cy, the defendant waived its right to claim termination of the insurance due to occupancy. There was no evidence that Maryland Casualty or its agent was aware of the rental arrangement until after the fire. Although Structural Systems, the builder, had actual knowledge that the calcium propanate was being stored in the building, Structural Systems was not an agent or subagent of Maryland Casualty and its knowledge will not be imputed to the defendant. We find no waiver.

Plaintiff's complaint should be dismissed with prejudice at plaintiff's cost.