WATER STREET
DEVELOPMENT, LTD.

v.

J.W. CORR AGENCY, INC. and Aetna
Casualty and Surety Company.

No. 86–272 Appeal.

Supreme Court of Rhode Island.

April 1, 1988.

Louis DeSimone, Jr., A. Brosco, Brosco & Brosco, Providence, for plaintiff.

Mark Hadden, Gildey, Lovegreen & Sarli, James J. McKenna, Howard E. Walker, Hinckley, Allen, Tobin & Silverstein, Providence, for defendant.

OPINION

KELLEHER, Justice.

These cross-appeals by the plaintiff and its insurer concern the insurer's refusal to pay on a builder's risk fire insurance policy that covered the plaintiff's restaurant against loss while it was under construction. The insurer denied liability on the plaintiff's claim for a fire loss because the

plaintiff had allegedly "occupied" the premises in violation of the insurance contract. The other defendant, J.W. Corr Agency, Inc., sold the policy to the plaintiff. Hereafter we shall refer to the plaintiff as Water Street, the insurer as Aetna, and the defendant J.W. Corr Agency, Inc., as Corr.

Although a Superior Court jury found that neither Aetna nor Corr had breached its contractual duties to plaintiff, the trial justice on his own initiative vacated the verdict as it related to Aetna. He ruled that Aetna was liable on the builder's risk policy and granted Water Street's motion for a new trial limiting the grant to the issue of damages. The trial justice, however, denied Water Street's motion for a new trial against Corr. Water Street is before us on appeal from the denial of its motion for a new trial against Corr, and Aetna appeals from the trial justice's grant of a new trial. The critical issues in this dispute can best be understood by a brief recitation of the pertinent facts.

In January of 1981 Water Street, a corporation controlled by Joseph Rossi, began construction of a restaurant at 28 Water Street in East Greenwich. To protect its investment, Water Street purchased an insurance policy from Corr. Aetna issued to Water Street what is known in the insurance business as a builder's risk insurance policy. According to Corr, Aetna's policy afforded Water Street with additional protection for the structure during the course of construction. As the construction progressed and the building's value increased, so did the coverage. The increase in coverage was mirrored by an increase in the premium. The policy became effective on February 1, 1981, and was to provide coverage for the ensuing year or until the completion of the building, whichever occurred first.

Once the restaurant was built and an "ancil" sprinkler system that is designed to prevent grease fires in the kitchen area had been installed, the builder's risk policy would be replaced with a permanent insurance policy. However, Aetna's policy contained a provision that made it clear that the builder's risk policy coverage would terminate once the Water Street property was "occupied." While construction was underway, Corr on several occasions advised Water Street that the building under construction was covered by the builder's risk policy. However, the agent emphasized that no permanent insurance would be issued until the fire-prevention equipment had been installed in the kitchen. The last such assurance was made by Corr on May 12, 1981, the evening before a fire caused by faulty wiring in an ice-making machine severely damaged the structure. At that time, the construction project was nearly finished. However, the fire-prevention system had yet to be installed, and the gas ovens were not operative. An estimate of the damage revealed that the cost of rebuilding the fire-damaged structure would be somewhere in the neighborhood of $86,000. Aetna has consistently maintained throughout this litigation that it was not required to compensate Water Street because the record is replete with evidence that Water Street had occupied the premises prior to the time the ice machine went awry.

A review of the record reveals a dispute concerning the date the restaurant was occupied as such. The contractor who was building the restaurant testified that in early May 1981 he procured a certificate of occupancy for the property. He also reported that the restaurant had been opened for business on the night of the fire. However, the bills he submitted for payment indicate that his employees were still working full-time on the project the day before the May 13 conflagration.

Joseph Rossi's ex-wife and former employee, Ann Marie Spinale, testified that the restaurant was not open for business prior to May 13, 1981. On May 12 of that year, she and her husband hosted a private party on the premises but did not use the kitchen to prepare food and did not serve drinks to the public. To contradict this testimony, Aetna produced pretrial discovery material that included an affirmative response to an inquiry posed by Aetna which asked Water Street if it would admit that the corporation "occupied the property

and opened it for business as a restaurant not later than May 11, 1981."

Both Aetna and Corr moved unsuccessfully for directed verdicts at the close of Water Street's case in chief. Each renewed its motion after all the evidence was submitted. The trial justice reserved decision on Corr's motion for a directed verdict, and he denied Aetna's motion. The jury returned verdicts for both defendants, after which Water Street moved for a new trial.

The trial justice first addressed the claim lodged against Corr. He denied Water Street's motion for a new trial against Aetna's agent and granted Corr's reserved directed verdict motion. The trial justice then analyzed the claim pending against Aetna. He determined that "the jury was incorrect in returning the verdict" because the evidence indicated that as of the date of the fire the building had not been completed, the restaurant was not operable, and the builder's risk policy was still in effect. He stated that he would have granted summary judgment on the issue of liability for Water Street against Aetna if a motion for such relief had been made. Consequently the trial justice then announced that he was going to "grant the motion for new trial as to the question of damages only, and [to] reverse [ ]—notwithstanding the verdict of the jury, and enter judgment for liability to the plaintiff as against Aetna."

On appeal Aetna urges this court to consider the reversal of its favorable jury verdict as a judgment notwithstanding the verdict. Aetna contends that this ruling was erroneous because Water Street failed to move for a directed verdict at the close of the evidence or move for a judgment non obstante veredicto after the jury verdict was returned. Aetna further asserts that even if Water Street had complied with the proper procedures for a judgment n.o.v., the evidence in support of the insurer compelled denial of such a motion.

In this case the trial justice has, in effect, granted a judgment notwithstanding the verdict. He did so on his own motion without any such request from Water Street and despite the fact that a judgment notwithstanding the verdict is a procedure that is not recognized in this jurisdiction. Unlike the Federal Rules of Civil Procedure, our rules do not provide for a judgment notwithstanding the verdict. *See* Super. R. Civ. P. 50.[1] A properly made motion for a directed verdict at the close of the evidence obviates the need for a judgment non obstante veredicto. *Russo v. Odell*, 105 R.I. 349, 356, 252 A.2d 135, 139 (1969). *See Haxton's of Riverside, Inc. v. Windmill Realty, Inc.*, 488 A.2d 723, 724 n.1 (R.I. 1985).

We explained in *Russo v. Odell* that a litigant "loses nothing by not being able to move for judgment n.o.v. after his motion for a directed verdict at the close of all the evidence has been denied." 105 R.I. at 356–57, 252 A.2d at 139. The party whose motion is denied can receive a more comprehensive review of the evidence by moving for a new trial. *Id.* We further explained in *Padula v. J.J. Deb-Cin Homes, Inc.*, 111 R.I. 29, 33, 298 A.2d 529, 532 (1973), that:

> "a motion for judgment *non obstante veredicto* imposes unnecessary burdens on the trial justice, inasmuch as the moving party has had full opportunity in the course of all the evidence to obtain a determination of the legal sufficiency thereof through a motion for a directed verdict which the trial court may reserve for decision after the verdict has been returned. Here plaintiffs failed to so move for a directed verdict at the appropriate time * * * and are, therefore, without any opportunity to have the sufficiency of the evidence weighed once the verdict is returned."

**1.** The reporter's notes to Rule 50 of the Superior Court Rules of Civil Procedure point out that Fed. R. Civ. P. 50(b) "requires a motion for judgment notwithstanding the verdict within ten days after entry of judgment, even though the court has reserved judgment on a motion for a directed verdict. Such post-judgment motion is not required by this rule." Instead, Rhode Island's Rule 50(b) provides that a decision on a motion for a directed verdict may be reserved by the trial justice until after the jury has rendered its verdict.

■ Here, by setting aside the jury verdict in this dispute, the trial justice committed reversible error. However, his grant of Water Street's motion for a new trial was right on target.

Although the trial justice's decision concerning the Aetna verdict was improper, in discussing Water Street's motion for a new trial against the insurer, he independently assessed the credibility of the witnesses who testified at trial—Water Street's employee Ann Marie Spinale, the building contractor, and the insurance agent—and he appraised their testimony in light of his charge to the jury. *Barbato v. Epstein*, 97 R.I. 191, 193, 196 A.2d 836, 837 (1964).

■ In his charge the trial justice explained to the jury that the occupancy provision relied on by Aetna would not be triggered until the building became occupied or it had been put to a practical and substantial use for the purpose for which the structure was intended. The fact that the building was temporarily used or occupied before the construction had been completed did not necessarily justify a conclusion that the building was occupied within the meaning of the policy. We subscribe to those sentiments. Similar sentiments are to be found in *Reliance Insurance Co. v. Jones*, 296 F.2d 71 (10th Cir. 1961); *McCarty v. Maryland Casualty Co.*, 429 F.Supp. 112 (W.D. Ark. 1976); *Cuthrell v. Milwaukee Mechanics Insurance Co.*, 234 N.C. 137, 66 S.E.2d 649 (1951); Annot. *Builder's Risk Insurance Policy*, 97 A.L.R.3d 1270 (1980).

Evidence in the record would indicate that the Water Street structure had not reached the stage where it was ready for occupancy. As noted earlier, the fire-prevention equipment was not in place and the gas ovens, which undoubtedly play an important role in carrying on business in a restaurant, were inoperative and were not connected to the gas supply. It is also clear that Aetna could not rely on the single use on May 12 to trigger its occupancy clause.

■ In view of the meaning we attribute to Aetna's use of the word "occupied," the trial justice was justified in giving little or no weight to Water Street's pretrial admission of occupancy. The discovery sought by Aetna on the subject of occupancy called for a legal conclusion that is beyond the permissible scope of the pretrial admissions, interrogatories and depositions used by the insurer in this dispute. *Adley Express Co. v. Highway Truck Drivers & Helpers, Local No. 107*, 349 F.Supp. 436, 450 (E.D. Pa. 1972); 4A *Moore's Federal Practice* § 36.04[4] (1987). Since Aetna's pretrial discovery constituted its entire case in chief, the trial justice did not overlook or misconceive material evidence in granting Water Street's motion for a new trial against Aetna. The trial justice did, however, err by limiting a new trial to the issue of damages. Since credibility remains an issue in this dispute, we direct the new trial be granted in regard to all issues that were in dispute between Water Street and Aetna.

■ We now turn to Water Street's motion for a new trial against Corr, the insurance agent. In reviewing this motion, the trial justice relied on the testimony of Ann Marie Spinale and Corr's president. After the trial justice weighed their testimony and assessed the witnesses' credibility, he concluded that the president of Corr had procured adequate insurance for the property and that he had expressly and unambiguously informed Water Street that permanent or comprehensive coverage was not available until all the installations at the restaurant were completed. The trial justice therefore denied the new trial motion because the Corr agency had satisfied its contractual obligations to Water Street. This finding was made in accordance with the standards for reviewing new trial motions. *Pearce v. International Display Corp.*, 526 A.2d 501, 504 (R.I. 1987). Denial of Water Street's motion and the subsequent granting of Corr's reserved directed verdict motion are clearly supported by the record and will not be disturbed on appeal.

Accordingly, Aetna's appeal is denied in part and sustained in part, the judgment appealed from is vacated, and the plaintiff's claim against Aetna is remanded to the Superior Court for a new trial on all

issues. Water Street's appeal in regard to Corr is denied and dismissed, and the judgment appealed from is affirmed.